**Paul Leslie MARSH, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. M–86–643.**

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1988.

As Corrected Sept. 21, 1988.

Johnie O'Neal, Asst. Public Appellant Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., William Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Paul Leslie Marsh, was convicted of the crimes of Negligent Homicide and Obstructing an Officer in the District Court of Tulsa County Case No. CRM–86–108. He was sentenced to terms of six (6) months and one (1) year imprisonment, respectively; the sentences to run consecutively, and he appeals.

On January 17, 1986, four-year-old Travis Baker, Jr. was killed when he was backed over by a pickup truck driven by the appellant. The appellant's own account of this tragic death is as follows.

■ The appellant worked as a security guard at a Broken Arrow oilwell service company equipment yard. On the day in question, the appellant's wife was babysitting young Travis Baker and caring for the couple's own young children at the same time. The appellant's wife had brought the appellant's dinner to him at the yard, taking the children with her.

After the group arrived at the equipment yard with his meal, the appellant testified that the kids insisted on making rounds with him. He put them in the back of his company pickup, left the tailgate down, and began driving slowly around the equipment yard. A short time later, the appellant stopped because he thought he had seen something near some dog cages. As the appellant began backing up, he felt a bump and heard his son start screaming. He again stopped the truck, got out, and found young Travis Baker laying on the ground. The appellant began administering C.P.R. while his wife called an ambulance and the police. The boy died a short time later.

The appellant's first assignment of error is that his convictions are "contrary to law because they are based upon insufficient evidence." The appellant acknowledges the well-known test for assessing the sufficiency of the evidence in a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985). On review, this Court will examine the entire record to decide the issue of sufficiency of the evidence. *Rudd v. State*, 649 P.2d 791, 794 (Okl.Cr.1982). The appellant's own testimony shows that he had been warned by his supervisors not to allow family members on the premises and not to take them on his rounds with him. The appellant essentially admits that he knew the risks involved.

In order to be convicted of Negligent Homicide, a death must have occurred as the proximate result of a defendant's use of a vehicle in "reckless disregard" of the safety of others. 47 O.S.1986 Supp., § 11–903(a). "Reckless disregard" is the same as "culpable negligence," and has been defined as the want of "ordinary care

and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions." *Thompson v. State*, 554 P.2d 105, 108 (Okl.Cr.1976). There is ample evidence in the record which supports the jury's verdict on the charge of Negligent Homicide.

■ The appellant's argument that his conviction for Obstructing an Officer was based on insufficient evidence presents a more difficult question. The applicable statute is 21 O.S.1981, § 540, and states:

"Any person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."

We agree with the argument presented by the State: There is no requirement that a defendant use physical force against an officer before he may be charged with violating this statute. *See* 21 O.S.1981, §§ 267, 268.

In this case, the appellant was charged with Obstructing An Officer because when the police first arrived, the appellant gave a false statement to the investigating officer. The true facts were discovered only because the suspicions of the police were aroused when the story given by the appellant's wife did not match the appellant's account. Both had stated that the accident occurred at the gate to the equipment yard, and each had claimed to be the driver. It was only after the appellant was confronted the next day that he gave the true account of the events surrounding Travis' death.

In his argument on appeal, the appellant admits that the false statement given to the police "impeded" the investigation. The jury was instructed that the appellant could be found guilty only if he: 1) willfully, 2) delayed or obstructed, 3) a police officer, 4) in the discharge of his duty. The record shows that the appellant, by his own admissions, provided evidence of the first two elements above. Elements numbered 3) and 4) were provided by testimony from the police officer(s). If "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt,"

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), a conviction will not be reversed for insufficiency of the evidence. The evidence here clearly meets that standard.

■ In his last assignment of error, the appellant states that cumulative improper comments and questions made by the prosecutor denied him a fair trial. We note that the vast majority of these alleged improprieties were successfully objected to. Also, in the appropriate circumstances, the jury was admonished to disregard the comments. Admonishments to the jury are considered to cure such defects unless, after considering all of the evidence, the error is of such a nature that it appears to have determined the verdict. *See, e.g., Kitchens v. State,* 513 P.2d 1300, 1304 (Okl. Cr.1973).

The appellant also states that the prosecutor's closing arguments were so prejudicial that reversal is required. This Court has made it abundantly clear that argumentation directed solely at invoking the passions of the jury will not be tolerated. *See Williams v. State,* 658 P.2d 499 (Okl. Cr.1983). This rule, however, still contemplates liberal freedom of speech and a wide range of discussion. *McDonald v. State,* 553 P.2d 171, 175 (Okl.Cr.1976).

We do not see, from our reading of the transcript, the level of gross impropriety in the prosecutor's closing argument that the appellant suggests. Nor do the statements, though successfully objected to, rise to the level of impropriety evidenced in the cases cited. *See Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983), *cert. denied,* 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986); and *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980). Again, the jury was properly admonished and any error, based on this record, was cured. *See Kitchens v. State, supra.* This final assignment, too, lacks sufficient merit to warrant reversal.

Accordingly, the judgments and sentences are AFFIRMED.

BRETT, P.J., concurs in results.

PARKS, J., concurs in part/dissents in part.

PARKS, Judge, concuring in part and dissenting in part:

I concur in the affirmance of appellant's conviction for obstructing an officer and dissent to the affirmance of his conviction for negligent homicide.

Title 21 O.S.1981, § 540 makes punishable willful actions which delay or obstruct an officer in the discharge of his duty. Nowhere in the statute does it refer to physical force. Clearly, physical force may indeed cause a delay or obstruction of an officer, but physical force is not the only way in which a police officer may be hindered from carrying out his duties as a police officer. While we have never interpreted 21 O.S.1981, § 540 to include actions such as those of the appellant, *Ratcliff v. State,* 12 Okl.Cr. 448, 158 P. 293 (1916), several other jurisdictions, which have similar statutes, have determined that wilfull actions like those of appellant are sufficient to constitute a violation of statutes dealing with obstruction of an officer. *See Newton v. State,* 698 P.2d 1149 (Wyo.1985); *State v. Latimer,* 9 Kan.App.2d 728, 687 P.2d 648 (1984). I agree with the rationale in these cases in that there are many ways to obstruct an officer other than physical force. Hence, our ruling in *Ratcliff v. State, supra,* should be overruled to the extent that it conflicts with the holding in the present case. I concur in the affirmance of this conviction.

However, I must vigorously disagree with affirmance of appellant's conviction for negligent homicide. The comments of prosecutor Sharon Ashe so prejudiced the appellant that reversal for a new trial is warranted. Ms. Ashe repeatedly attempted to inflame the passions of the jury by her continuous efforts to introduce the bloody clothing of the four-year-old victim; by her comments about the lack of remorse shown by the appellant; by her statements as to the future reckless conduct of the appellant; and by her comments on the "great deal of material wealth" of the ap-

pellant. While several of these comments were objected to by defense counsel and such objections were sustained, in a case as close as this one, the comments clearly influenced the outcome. Statements made by the prosecutor to invoke sympathy for the victim are improper as are comments relating to "future criminal acts." *Williams v. State,* 658 P.2d 499, 500 (Okla. Crim.App.1983); *Brewer v. State,* 650 P.2d 54, 58 (Olka.Crim.App.1982).

Ms. Ashe's conduct regarding the introduction of the victim's bloody clothing warrants special comment. She attempted to introduce the clothing in order to prove the identity of the victim. Several times, defense counsel agreed to stipulate to the identity of the victim, and Ms. Ashe refused his stipulation. Apparently, she was not satisfied with a stipulation as to identity, but instead wanted to arouse the sympathies of the jury by introducing the child's bloody clothing. While the trial court refused to allow the introduction of this evidence due to its prejudicial effect, it is unclear from the record whether this clothing could be viewed by the jury. Although Ms. Ashe's conduct was not as egregious as that of the prosecutor in *Brewer v. State, supra,* actions such as these, which are designed purely to influence the jury, cannot be condoned. *Id.* at 57.

Because of the emotional impact of Ms. Ashe's behavior, and its prejudicial effect, especially in light of the fact that appellant was charged with the negligent homicide of a four-year-old child, I must dissent. Accordingly, I would reverse and remand for a new trial on the charge of negligent homicide.