Doy Dale PENINGER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–870.

Court of Criminal Appeals of Oklahoma.

May 14, 1991.

Keith Ward, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice Presiding Judge:

Appellant Doy Dale Peninger was tried by jury and convicted of two (2) counts of Indecent Proposal to a Minor in violation of 21 O.S.Supp.1985, § 1123, in the District Court of Tulsa County, Case No. CRF–88–2585. The jury recommended as punishment three (3) years imprisonment on each count. The trial court sentenced accordingly. Appellant now claims that errors occurred during his trial which require reversal of his conviction by this Court. We agree and reverse for a new trial, stating only those facts pertinent to the resolution of the case.

In his second assignment of error, Appellant alleges that the trial court erred in failing to sustain his motion to quash the search warrant and suppress the fruits of that search, namely photographs of young boys in Appellant's foster care clad only in their underwear. The record reflects that Appellant was charged on June 28, 1988, with one count of lewd molestation and one count of indecent proposal to a child, committed against M.N. That same day an affidavit for a search warrant was prepared which stated in part:

> photos of juvenile males clad in white underware [sic] and others of bright colored bikini underwear. Camera and camera equipment suitable for taking these photos.... Was used as the means of committing the felony, to-wit: Soliciting a Minor Child for Indecent Photos (21 OS 1021 B 2) (O.R. 10)

Issued and executed that day, the warrant yielded approximately one hundred photographs, sixteen (16) of which were admitted into evidence at trial. The photos admitted into evidence were discovered on the coffee table in Appellant's living room, among a stack of photographs. These sixteen (16) photographs were introduced during the testimony of Detective Roberts, the affiant on the affidavit to the search warrant and the officer who executed the warrant.

On August 12, 1988, Appellant filed a Motion to Quash the arrest for the reason that there was no probable cause for the issuance of the search warrant or the arrest. Appellant renewed this motion at a pre-trial hearing but did not stand on it once it was overruled. Appellant again

entered his objection when the photographs were introduced and admitted into evidence.

■ The issuance of a search warrant is dependent upon a neutral and detached magistrate's examination of the totality of the circumstances to determine if probable cause exists for the issuance of the warrant. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Langham v. State*, 787 P.2d 1279, 1280 (Okl.Cr. 1990). The scope of items that can be validly listed in a search warrant as the subject of a search are instrumentalities of a crime, fruits of a crime, contraband and/or evidence of a crime. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In order for there to be a valid finding of probable cause "enough underlying facts and circumstances must be set forth in the affidavit to enable the magistrate to independently judge the affiant's conclusion that [evidence of the crime] is located where the affiant says it is." *Asher v. State*, 546 P.2d 1343, 1347 (Okl.Cr.1976).

■ In the present case, the affidavit to the search warrant provided that Appellant possessed in his home photographs of young boys clad only in their underwear which were used to commit the crime of soliciting a minor for indecent photos pursuant to 21 O.S.1981, § 1021(B). This information was insufficient for the reviewing magistrate to determine that a crime had been committed or that there was probable cause to believe that evidence of a crime was contained in the Appellant's home as it failed to state the existence of a crime. The photographs were not evidence of a crime as they did not meet the definition of obscene material set forth in 21 O.S.1981, § 1024.1. Therefore, we find that the magistrate erred in issuing the search warrant based upon the foregoing information and that the evidence seized pursuant to that warrant (the photographs) should have been suppressed.

■ Further error occurred in the admission of the photos into evidence. For photographs to be admissible, their content must be relevant and their probative value must substantially outweigh their prejudicial effect. *Nguyen v. State*, 769 P.2d 167 (Okl.Cr.1988), *cert denied*, 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 *reh. denied*, 492 U.S. 938, 110 S.Ct. 27, 106 L.Ed.2d 639; *Smith v. State*, 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Oxendine v. State*, 335 P.2d 940, 942 (Okl.Cr.1958). When the probative value of photographs is outweighed by their prejudicial impact on the jury—that is the evidence tends to elicit an emotional, rather than rational, judgment by the jury—then they should not be admitted into evidence. *President v. State*, 602 P.2d 222, 225 (Okl. Cr.1979); *Oxendine*, 335 P.2d at 942.

In the instant case, we find that the photographs were not relevant and should not have been admitted into evidence. The subjects of the photographs are young boys who have been in Appellant's foster care. The victim is not represented in this collection of photographs. Testimony at trial revealed that the photographs were taken prior to the time M.N. was placed in Appellant's home. No allegations were ever made that Appellant took *any* photographs of M.N. or that the offenses Appellant committed involved soliciting minors for photographs. The photos do not prove or tend to prove an issue in the case. They do not have a tendency to make more or less probable a material fact in issue.

We recognize the well established rule that the admissibility of photographs is a matter within the trial court's discretion and that absent an abuse of that discretion, this Court will not reverse the trial court's ruling. *Nuckols v. State*, 690 P.2d 463, 470 (Okl.Cr.1984), *cert denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). However we fail to see the relevancy of these photographs.

Accordingly, we find the failure to suppress the photos and their ultimate admission into evidence to be fatal errors which require reversal of the case and remand for a new trial.

■ Appellant's fourth and fifth allegations of error concern the testimony of

defense witness, Richard Demorest. Demorest, a licensed social worker for Children's Medical Center who treated the eleven year old victim, informed the court that M.N. had instructed him not to divulge any confidential communications. The defense objected and requested the court direct the witness to answer. The trial court ruled that it would permit the witness to testify to "anything that doesn't violate the privilege of the alleged victim in this case." The court further clarified its ruling by stating that "it appears that a legal privilege exists, and if the patient has indicated to you he doesn't want you to violate that, then I'm not going to order you to do so." Once he took the stand, Mr. Demorest stated that M.N. had requested that he not testify and that he would refuse to testify unless ordered to testify by the court.

Appellant alleges that the trial court erred in failing to rule as a matter of law on the existence of a psychotherapist/patient privilege between the victim and his therapist. Appellant argues that, instead of ruling as a matter of law whether the privilege existed, the trial court deferred the decision to the witness. Should this Court find that the trial court did not improperly defer the determination of the privilege to the witness, Appellant argues that it was error to exclude the testimony as it did not properly fall under the privilege.

■ Privileged communications are created by statute and can be found in the Evidence Code. See 12 O.S.1981, § 2101, *et seq.* Section 2501 provides that:

except as otherwise provided by the constitution, statute or rules promulgated by the Supreme Court, no person has a privilege to: 1) Refuse to be a witness; 2) Refuse to disclose any matter; 3) Refuse to provide any object or writing, or 4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

The existence of a legal privilege is a matter of law which is to be decided by the trial judge prior to the witness' testifying. In the present case, the trial judge improperly deferred the decision of whether a privilege existed to the witness.

The physician/psychotherapist-patient privilege is set forth in 12 O.S.1981, § 2503. Subsection A provides in pertinent part:

3. A "psychotherapist" is:

a. a person authorized to practice medicine in any state or nation, or reasonably believed by the patient to be so authorized, while engaged in the diagnosis or treatment of a mental or emotional condition, . . . .

b. a person licensed or certified as a psychologist under the laws of this state, . . . . or reasonably believed by the patient to be so licensed or certified, while similarly engaged; and

Here, Mr. Demorest testified that he was not a licensed physician, but was a clinical social worker. This Court has never interpreted the above statute to include communications made to a social worker.

■ Communications between a social worker and his or her client are covered in 59 O.S.1981 § 1272.1. This section recognizes that such communications are confidential, but "there shall be no privilege created by this act (Section 1250 et seq.) as to any information acquired by a person licensed under these provisions." This section further provides in pertinent part:

Nothing in this act shall be construed to prohibit any licensed person from testifying in court hearings concerning matters of adoption, child abuse, child neglect, or matter pertaining to the welfare of children. . . .

Subsection 3 specifically addresses information acquired by a social worker from a person under eighteen (18) years old:

When the person is a child under the age of eighteen (18) years and the information acquired by the licensed person indicates that the child was the victim or subject of a crime the licensed person may be required to testify fully in relation thereto upon any examination, trial or other proceeding in which the commission of such a crime is a subject of inquiry;

Therefore, Section 1272.1, by its very wording, sets forth no legal privilege in the communications between a social worker and client. This conclusion is further supported when Section 1272.1 is read in conjunction with the Evidence Code. Section 1272.1 was passed by the Legislature after the enactment of the Evidence Code. Section 1272.1 does not reference or mention in any way the legal privileges established by the Code. Therefore, we must conclude that it was not the intent of the Legislature to modify the Evidence Code in any way to create a privilege from testifying in court as it relates to the confidential communications acquired by a social worker from his or her client.

Accordingly, the communications between M.N. and Mr. Demorest in the present case were not privileged and the trial court erred in excluding Mr. Demorest's testimony. This error deprived Appellant of a fair trial and now necessitates reversal of the conviction.

■ In his final assignment of error, Appellant contends that the trial court violated the "best evidence" rule in allowing Officer Roberts to testify to his observations of newspaper articles in Appellant's home concerning molestations.

The "best evidence" rule usually applies to situations where a question relates to the contents of written documents. *Hayes v. State*, 397 P.2d 524, 527 (Okl.Cr.1964). *See also* 12 O.S.1981, § 3002. In *Hayes* we gave the following definition of the rule:

> For the purpose of proving the content of a writing, the original writing itself is regarded as the primary evidence, and secondary evidence is inadmissible unless failure to offer the original is satisfactorily explained.

In *Henson v. State*, 97 Okl.Cr. 240, 261 P.2d 916, 923 (1953), we quoted Corpus Juris and stated that the best evidence rule requires the production of the best evidence of which the nature of the case is susceptible. "It has no application to proof of a collateral, incidental or preliminary fact".

The rule as stated above, is not applicable to the instant case. Officer Roberts testified that when he executed the search warrant he observed approximately forty (40) to fifty (50) newspaper clippings that dealt with "rapes and molestations." (Tr. 137) Roberts stated that he did not seize the clippings as they were not included on the search warrant. The newspaper clippings were not introduced into evidence.

■ Appellant does not challenge the contents of the clippings, but argues that the witness' testimony left the jury with the impression that Appellant "had a morbid curiosity about molestation and punishment." We agree that the testimony about the newspaper clippings left an impression with the jury which was prejudicial to the Appellant. It was improper to question the officer about the newspaper clippings as they were neither evidence of a crime nor subject to seizure under the search warrant. Such testimony introduced evidence which was not relevant to any issue in the case and which could only serve to inflame the jury against the Appellant.

■ Based upon the foregoing accumulation of errors, we find that the Appellant's judgment and sentence must be and is hereby REVERSED and REMANDED FOR A NEW TRIAL.[1]

LANE, P.J., and BRETT and JOHNSON, JJ., concur.

PARKS, J., specially concur.

PARKS, Judge, specially concurring:

I agree that appellant's convictions should be reversed based upon the errors discussed above. However, independent of those errors, I also find that the overzealous actions of Assistant District Attorney

1. In his specially concurring opinion, Judge Parks addresses the issue of prosecutorial misconduct. This writer respectfully disagrees with the practice of naming trial counsel as a part of critical review of their conduct. This practice is tantamount to a public censure wherein trial counsel is denied the basic rights of due process. Further, such a public censure is outside the scope of our appellate review, as the plenary power of attorney discipline is vested in the Oklahoma Supreme Court pursuant to 5 O.S. 1981, CH. 1, App. 1–A, Rule 1.1.

Sharon Ashe denied appellant of a fair trial. Without extensive elaboration, the following is indicative of the prosecutor's misconduct in this case.

First, Ms. Ashe either inexcusably failed or deliberately refused to produce exculpatory/impeachment evidence specifically requested by the defense. Defense counsel independently secured this information on the day before trial. Such evidence, which indicated that M.N. was a habitual liar, a thief and a violent, aggressive and vengeful boy with significant psychological disorders, was certainly relevant for purposes of impeaching the State's complaining witness. A prosecutor has an ethical duty to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense...." *Oklahoma Rules of Professional Conduct,* Rule 3.8(d). Moreover, "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment...." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). *See also Coleman v. State,* 747 P.2d 322, 323 (Okl.Cr. 1987). Impeachment evidence falls within the *Brady* rule. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).

I also wish to address improper comments and questions of the prosecutor during trial. Ms. Ashe asked numerous questions designed to elicit inadmissible testimony. *See Chase v. State,* 541 P.2d 867, 870 (Okl.Cr.1975). After a thorough review of the record, it is apparent that Ms. Ashe intentionally elicited an evidentiary harpoon. Finally, the prosecutor repeatedly asked argumentative questions of virtually every defense witness.

This case does not represent the first time Ms. Ashe's misconduct has been addressed by this Court. *See Marsh v. State,* 761 P.2d 915 (Okl.Cr.1988), and *McCrady v. State,* Unpublished Opinion, Case No. F–87–490 (Okl.Cr. Oct. 14, 1988). As this writer stated in a separate opinion in *McCrady,* "Ms. Ashe would do well to heed the warning issued by the Tenth Circuit Court of Appeals in *Bowen v. Maynard,* 799 F.2d 593 (10th Cir.1986), as her actions indicate she does not comprehend the unique role of a prosecutor in the orderly administration of justice." "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." *Oklahoma Rules of Professional Conduct,* Rule 3.8, Comment. His or her primary duty is not to convict, but to see that justice is done. *Tobler v. State,* 688 P.2d 350, 354 (Okl.Cr.1984). On the basis of the foregoing, I find that reversal in this case is also warranted by the misconduct of the prosecutor.

Finally, I wish to reiterate my disagreement with the majority of this Court's abandonment of the *Aguilar–Spinelli* standard as it applied to state constitutional attacks upon search warrants. *See Langham v. State,* 787 P.2d 1279, 1281 (Okl.Cr.1990) (Parks, P.J., concurring in result). As matter of *stare decisis,* however, I am obligated to apply the *Illinois v. Gates* standard to the facts of this case. Having done so, I concur that the issuance of the search warrant was erroneous.