812

Mary ASSALONE, Appellant,

v.

HARTFORD ACCIDENT & INDEMNITY
COMPANY, a Corporation,
Appellee/Cross Appellant,

v.

Larry DYER; Dyer Glass & Mirror,
Inc., Cross Appellee.

No. 81087.

Court of Appeals of Oklahoma,
Division No. 3.

April 19, 1994.

Certiorari Denied Dec. 11, 1995.

Gary A. Eaton and Michael L. Seymour,
Tulsa, for Appellant.

Galen L. Brittingham and Marthanda J.
Beckworth, Thomas, Glass, Atkinson, Has-
kins, Nellis & Boudreaux, Tulsa, for Appel-
lee/Cross Appellant Hartford Accident & In-
demnity Co.

Brad Smith and Dennis King, Knowles,
King & Smith, Tulsa, for Cross Appellees
Larry Dyer and Dyer Glass & Mirror, Inc.

## OPINION

GARRETT, Vice Chief Judge:

Appellant, Mary Assalone (Appellant), was injured in an automobile accident due to the alleged negligence of Cross Appellee, Larry Dyer (Dyer). Appellant was acting within the scope of her employment with Day Schools, Inc. (Day), and Dyer was acting within the scope of his employment with Dyer Glass & Mirror, Inc., at the time of the accident. Appellant received workers' compensation benefits through Day's workers' compensation insurance carrier, The Travelers (Travelers). The vehicle Appellant was driving was insured by Hartford Accident & Indemnity Company (Hartford), Appellee/Cross Appellant. This coverage included uninsured-underinsured motorist (UM) coverage.

Appellant received $33,693.97 in workers' compensation benefits. She sued Hartford for (UM) benefits and advised the company she did not intend to bring a lawsuit against Dyer. Hartford refused to pay UM benefits unless Appellant sued Dyer, contending its subrogation rights against Dyer would be otherwise destroyed. Hartford brought a cross petition against Dyer and Dyer's employer. Dyer contended that Hartford had no rights of subrogation against him because its liability to Appellant had not yet arisen. The trial court granted Dyer's motion for summary judgment against Hartford, and granted Hartford's motion for summary judgment against Appellant. Appellant brought this appeal against Hartford, and Hartford cross appealed against Dyer.

First, Appellant contends that neither the Hartford policy nor Oklahoma law, under 36 O.S.1991 3636, required Appellant to sue the tortfeasors, or otherwise take affirmative steps to protect and secure Hartford's UM subrogation interests, as a condition precedent for recovery of UM benefits. The Hartford policy contains the following language relating to UM subrogation rights:

### SECTION IV—BUSINESS AUTO CONDITIONS

5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

The UM endorsement to the Hartford policy contains the following:

A. COVERAGE

We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

The UM endorsement also contains the following:

3. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Appellant contends the policy does not require her to sue the tortfeasor in order to receive UM benefits and to protect Hartford's subrogation rights, only that she must do nothing affirmatively to impair its rights. Further, she contends that under the UM endorsement, if and when the UM insurer makes payment to the insured, and the insured has rights to recover damages from another, those rights are then assigned to the insurer. In other words, she contends there is nothing in the policy *requiring* the insured to take any affirmative action, or which gives the insurer any right to require the insured to sue the tortfeasor, *unless and until* UM benefits are paid by the insurer.

Appellant contends the pertinent section of the UM statute, § 3636(E), like the policy, does not require the insured to do an affirmative act to preserve an insurer's subrogation rights, and that an insurer acquires such rights only after making payment to its insured. Section 3636(E) provides:

E. In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made....

Hartford contends, however, that unless Appellant takes steps, i.e., by bringing an action against Dyer, to preserve its subrogation rights, which arise by operation of law under § 3636, as well as under the insurance policy, its subrogation rights are destroyed, and she cannot seek UM benefits under the policy. It contends that the issue in this case is whether the insured is entitled to recover UM coverage when she refused to heed the insurer's request, made before the two-year tort statute of limitations period had lapsed, to protect the insurer's subrogation rights by filing a lawsuit against the tortfeasor.

In *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105 (Okl.1991), the Supreme Court addressed the issue of whether an underinsurer could require the insured to exhaust its liability coverage by settling with the tortfeasor's employer (the City of Norman) before the UM insurer had to make payment. The Court held where the claim greatly exceeded the available liability coverage, there was no reason to require payment be delayed while

awaiting payment by the liability carrier. The Court held that doing so would frustrate the purpose of underinsured motorist coverage—"protection of the insured from loss incurred at the hands of an underinsured motorist. *See Uptegraft [v. Home Insurance Company]*, 662 P.2d [681] at 683–84 [ (Okl. 1983) ]." The *Buzzard* Court also stated:

> Section 3636(C) contemplates that underinsured motorist coverage will be available for that amount of injury or damage which exceeds the *liability limits* of the tortfeasor. Thus, Farmers' assertion that under-insurance is "excess" insurance is correct only in the sense that it becomes available only when the claim exceeds the amount of liability coverage. However, it is not "excess" ... because exhaustion of limits is not required a condition precedent to recovery. Our statute is clear; underinsurance is available when "the liability limits ... are less than the amount of the claim ..." *See* 36 O.S. 1981 § 3636(C). (Emphasis in original).

· · · · ·

This Court, in Keel [*v. MFA Insurance Company*, 553 P.2d 153 (Okl.1976) ], contemplated the situation wherein an insured might wish to proceed directly against its insurer for uninsured motorist benefits without first adjudicating liability issues against the tortfeasor. We specifically held that such a course of action was permissible ... The underinsurer is directly and primarily responsible to the insured for that amount of the claim which exceeds the liability limits of the tortfeasor's insurance. The insured may proceed against the underinsurer without first adjudicating the liability issues against the tortfeasor.

· · · · ·

[R]egardless of whether the insured ever recovers from the tortfeasor, the insured may claim the benefits of underinsurance.

See also *Roberts v. Mid–Continent Casualty Company*, 790 P.2d 1121 (Okl.App.1989) (Cert. denied 1990), wherein this Court held "there is no need for a plaintiff to seek recovery first against the tortfeasor before liability can attach to the uninsured motorist

carrier", citing *Keel v. M.F.A.*, 553 P.2d 153 (Okl.1976), and *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okl.1983).

In *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 686 (Okl.1983), the Supreme Court addressed the issue of whether an insurer's loss of subrogation rights due to the running of the statute of limitations on a claim against the tortfeasor could bar a UM claim by the insured. The Court held that it could not bar the insured's claim. It cited with approval *Selected Risks Inc. Co. v. Dierolf*, 138 N.J.Super. 287, 350 A.2d 526, 529 (1975), and stated:

> In *Selected Risks*, the court said that by virtue of this cooperation agreement, the initial responsibility to act to protect subrogated rights rests upon the insurer. It held that when an insurer sits on these rights, it cannot be heard to complain when the statute of limitations has run. *Id.* 662 P.2d at 686–687 n. 11.

In the instant case, Appellant advised Hartford in advance of the running of the tort statute of limitations that she chose not to sue Dyer. Under the authority cited above, she clearly was within her rights to expect payment of her UM claim by Hartford without first pursuing Dyer. The fact that Hartford chose not to act, or even investigate, Appellant's claim does not prevent Appellant from receiving UM benefits when such benefits were contracted and paid for by Appellant's employer for the benefit of its employees such as Appellant. The policy at issue in this case does not require exhaustion of liability limits or suit against the tortfeasor. Additionally, the *Buzzard* Court specifically held that § 3636(C) has no specific requirement of exhaustion of liability limits as a condition precedent to recovery of UM benefits. 824 P.2d at 1111. We hold the trial court erred in sustaining Hartford's motion for summary judgment against Appellant, because Hartford is not entitled to a judgment as a matter of law. See Rule 13, Rules of the District Court.

This Opinion involves the question as to whether summary judgment was properly entered. It does not determine, and we express no opinion, as to what the outcome of the litigation should be. Certainly Hartford

had the right to bring Dyer into the case to protect any possible subrogation rights it may have. Thus, the order sustaining the summary judgment motion in favor of Dyer must also be reversed.

The orders of the trial court entering summary judgment in favor of Hartford and in favor of Dyer are reversed and this case is remanded to the trial court for further proceedings which are consistent with the views expressed in this opinion.

REVERSED AND REMANDED.

HUNTER, P.J., and BAILEY, J., concur.