924 P.2d 795 (1996)
In the MATTER of M.A.G., an adjudicated deprived child.
Mack GRAHAM, Appellant,
v.
STATE of Oklahoma, Appellee.
No. 86763.
Court of Appeals of Oklahoma, Division No. 1.
August 27, 1996.
Shelley A. Cundiff, Poteau, for Appellant.
Jeffrey C. Smith, Poteau, for Appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 1.

OPINION
HANSEN, Presiding Judge:
Appellant, Mack Graham ("Father"), seeks review of the trial court's October 31, 1995, *796 Order of Adjudication based on a jury verdict which determined his daughter, M.A.G. ("Daughter"), "Deprived" under the Oklahoma Children's Code, 10 O.S. Supp.1995, § 7001-1.1 et seq. The order made Daughter a ward of the court and placed custody of Daughter with the Department of Human Services (D.H.S.). On December 1, 1995, the trial court issued its Order of Disposition adopting the D.H.S. treatment plan presented to the court. From the Order of Adjudication, Father appeals.
On April 19, 1995, the District Attorney for LeFlore County, Oklahoma filed a petition in district court, alleging Daughter should be adjudicated deprived because "she was not receiving the proper parental care and guardianship due to repeated neglect of programs designed to meet her special needs." On August 16, 1995, the D.A. filed an amended petition alleging Daughter was deprived for the same reason listed in the first petition and also because "she is a child who is in need of special care and treatment because of a physical and mental condition whose parent is unable to provide said special care and treatment and is also the subject of neglect as defined in 10 O.S. 1101(a)(2)." On the same day, the trial court issued a temporary custody order, placing temporary custody of Daughter with D.H.S. After a jury trial, the Order of Adjudication was filed.
On appeal, Father contends the trial court erred in admitting hearsay testimony during the trial and that the admission thereof violated his due process rights and resulted in prejudice requiring reversal of the judgment. Specifically, Father maintains certain testimony by D.H.S. caseworker Lincoln concerning certain reports or documents Lincoln received from M.A.G.'s therapists should not have been admitted. He also argues it was reversible error to allow D.H.S. caseworker Benefield to testify regarding a doctor's report on M.A.G.
Generally, the injection of irrelevant or otherwise inadmissible evidence is not grounds to reverse a jury verdict unless the error was prejudicial. James v. Midkiff, 888 P.2d 5, 6 (Okla.App.1994); RJB Gas Pipeline Company v. Colorado Interstate Gas Company, 813 P.2d 14, 21 (Okla.App. 1990). The test of prejudice is the likelihood the verdict would have been different had the error not occurred measured by the usual criterion of the verdict's support in the evidence. James, at 6.
The monthly reports of M.A.G.'s therapists were not admitted as evidence. With regard to Lincoln's testimony that he received reports from M.A.G.'s therapists, the record shows Father failed to object to such testimony. Failure to object to alleged errors in the admission of testimony waives review of such errors in this Court. Sarkeys v. Haas, 402 P.2d 894 (Okla.1965). Father did object, on the basis of the "Best Evidence Rule", to the question of whether the monthly reports received by Lincoln showed why D.H.S. could not keep a Habilitation Training Specialist (HTS) in Father's employ. The trial court overruled the objection.[1] Lincoln responded that Father would make arrangements with the HTS and then not bring M.A.G. to the HTS or an HTS would return M.A.G. to her home and would have to wait until Father got home.
"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. 12 O.S.1991, § 2801(3). Evidence is hearsay when its probative force depends on the competency and credibility of a person other than the witness. In Re: Porter's Estate, 208 Okla. 475, 257 P.2d 517 (1953). A statement which is otherwise objectionable as hearsay does not become competent because it has been reduced to writing. Id., 257 P.2d at 519.
Lincoln's testimony regarding the content of these "monthly reports" is hearsay and the trial court erred in allowing Lincoln to testify regarding them. However, we conclude Father has not shown prejudice which requires *797 reversal because of this testimony. The transcript shows Father explained in detail his scheduling problems with HTSs for M.A.G., most of which were due to the fact that Father's home is rural and the HTSs did not live nearby, Father lacks reliable transportation and the fact that he did not have a phone at home. In addition, the D.H.S. caseworker stated he blamed the first two HTSs for their leaving Father's employ.
We hold, however, that the hearsay testimony of DHS caseworker Benefield regarding the contents of a doctor's report was prejudicial and the Order of Adjudication must be reversed.[2] During direct examination, Benefield testified she requested the August, 1995, emergency protective order and stated the basis for her request was
"a referral saying that there were several bruises. And in my investigation, I noticed these bruises and had her taken into protective custody. After having a doctor's examination, these bruises, he confirmed in his report that we have in the file that they were not consistent with the statement.. . ."
Father objected on the grounds of hearsay and the trial court overruled the objection. Benefield continued:
"In this report, he stated that these bruises did not consis [sic] with the statement that Mack made about why these bruises were there, so we took her into protective custody."
Benefield then stated M.A.G. was taken into custody on the basis of neglect and physical abuse but that they could not confirm physical abuse. She further stated the amended petition is based upon allegations of both abuse and neglect. During cross-examination of Father, he was questioned regarding the "reports of bruises that are unexplained". Father stated the bruises were explained and Appellee's counsel responded "Not to the satisfaction of Dr. Spear." Father's counsel objected to this questioning noting "Dr. Spears is not here." Dr. Spears did not testify at trial, nor was the report regarding the bruises offered into evidence.
Benefield's testimony describing the content of Dr. Spears' report is hearsay and should not have been admitted. The admission of this evidence deprived Father of his fundamental constitutional and statutory rights to due process, i.e. his right to cross-examine all adverse witnesses. In the Matter of M.A., 832 P.2d 437, 440 (Okla.App. 1992); 10 O.S.Supp.1995, § 7003-4.1[3]; Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). As previously noted, the amended petition for the Deprived adjudication and the Order of Adjudication are based on 1) neglect and 2) that M.A.G. was a child in need of special care and treatment and her parent is unable to provide said special care and treatment. 10 O.S.Supp.1995, § (9)(a)(2) and (3).[4] The amended petition was not, as Benefield testified, based on physical abuse.
At the time of trial, M.A.G. was almost 10 years old but functioned at about the two to three-year-old level. The record shows Father, who has had sole custody of M.A.G. since she was one year old, contacted the Developmentally Disabled Services Division (DDSD) of D.H.S. to obtain free services for M.A.G. and she received services coordinated *798 through DDSD from September, 1993 to February, 1995. These services are provided from agencies which are not a part of D.H.S. and a parent desiring these services is responsible for securing services for their children from the agencies and for setting schedules with therapists and other workers. The services are offered based on requests from a parent and as stated by the DDSD/D.H.S. case coordinator, "the parent can fully deny any part or all of the services" and it is always in the parent's control what the child receives. Father sought physical therapy, occupational therapy, speech therapy and habilitation training specialists (HTSs) for M.A.G. and coordinated these services with M.A.G.'s individualized education plan (IEP) set by M.A.G.'s public school.
The DDSD/D.H.S. caseworker testified M.A.G.'s attendance at speech and occupational therapy was "sporadic" in that she would make it to therapy consistently for three to four months and then have a lull of two to three months. During the time school was out, for example summer, M.A.G. would not attend as many therapy sessions. The evidence shows the public school provided for M.A.G.'s transportation to school (42 miles one way) either directly or by reimbursements for transportation expenses to Father and that M.A.G.'s attendance in school was good. Father introduced M.A.G.'s May 10, 1995 school IEP Review which stated speech pathology services for M.A.G. were being reduced to one time weekly, thirty minute sessions, beginning August, 1995. Father testified he stopped her speech therapy during summer in part based on the fact the school thought M.A.G.'s need for the therapy should be reduced. Although the IEP Review indicates Father did not attend that review meeting, the DDSD/D.H.S. caseworker stated Father had attended other reviews, including reviews on transportation issues. Although Father had utilized about five different HTS workers, the caseworker placed the blame of losing the first two workers with the first two workers. He admitted Father has had transportation problems and after one IHP (Individualized Habilitation Program) meeting which Father missed, they found him on the side of the road with his motorcycle. Benefield testified Father was "requested" by D.H.S. after the petition was filed to attend a parenting class and that he attended only one or two of the eight classes. The DDSD/D.H.S. caseworker testified although lifelong consistency is important in the treatment of special needs children, he could not confirm that in M.A.G.'s case missing a month would result in her digression of progress.
An examination of the entire record leads to the conclusion the hearsay evidence regarding the contents of a doctor's report of bruises on M.A.G. prejudiced Father in that it is likely the verdict would have been different had the error not occurred when measured by the other evidence in support of the verdict. James v. Midkiff, 888 P.2d 5, 6 (Okla.App.1994). The judgment of the trial court is accordingly, REVERSED.
JOPLIN and BUETTNER, JJ., concur.
NOTES
[1] The "best evidence rule" usually applies to situations where a question relates to the contents of written documents. Peninger v. State, 811 P.2d 609, 613 (Okla.Crim.App.1991). The rule requires the production of the best evidence of which the nature of the case is susceptible and has no application to proof of a collateral, incidental or preliminary fact. Id.
[2] Benefield's testimony regarding the content of a report from a Carter County, Oklahoma DHS worker, is rank hearsay. In the Matter of M.A., 832 P.2d 437 (Okla.App.1992). Father, however, failed to object to this testimony at trial and indeed cross-examined Benefield on the report. Father has waived review of this error on appeal.
[3] 10 O.S. Supp.1995, § 7003-4.1 requires adjudicative hearings to be conducted according to the rules of evidence. Subsection C provides: "A decision determining a child to be deprived must be based on sworn testimony and the child must have the opportunity for cross-examination unless the facts are stipulated."
[4] 10 O.S. Supp.1995, § 7001-1.3(9)(a)(2) and (3) provide a "deprived child" is a child " (2) who does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of his parents, legal guardian, or other person responsible for the child's health or welfare," or " (3) who is a child in need of special care and treatment because of his physical or mental condition including, but not limited to, a child born in a condition of dependence on a controlled dangerous substance, and his parents, legal guardian, or other custodian is unable or willfully fails to provide said special care and treatment."