2002 OK CIV APP 126

HARTFORD INSURANCE COMPANY OF the MIDWEST, Plaintiff/Appellant/Counter–Appellee,

v.

Larry DYER and Dyer Glass & Mirror, Inc., a corporation, Defendants/Appellees/Counter–Appellants.

No. 95,751.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 12, 2002.

Certiorari Denied Dec. 10, 2002.

Phil R. Richards, Thomas D. Hird, Richards & Conner, Tulsa, OK, for Appellant.

Dennis King, Ashley M. Bibb, King, Taylor & Ryan, P.C., Tulsa, OK, for Appellees.

Opinion by LARRY JOPLIN, Vice–Chief Judge:

¶ 1 Plaintiff/Appellant Hartford Insurance Company of the Midwest seeks review of the trial court's order granting judgment on a jury verdict on Hartford's subrogation claim against Defendant/Appellee Larry Dyer. In the principal appeal, Hartford complains of impairment of its right of subrogation by the trial court; Dyer counter-appeals the trial court's award of costs to Hartford as "pre-

vailing party." After thorough review of the record, we hold the order of the trial court should be affirmed in part, reversed in part, and the cause remanded for further proceedings.

¶2 In December 1988 while acting in the scope and course of her employment, Mary Assalone suffered injury in a motor vehicle accident caused by Dyer. To recover for her injuries, Assalone sought benefits from her employer's workers compensation carrier, Travelers Insurance, and in 1990, also brought an action against Hartford, her employer's underinsured/uninsured (UM) motorist carrier.

¶3 Assalone settled her workers compensation claim with Travelers for $2,183.35 in temporary total disability benefits, $16,510.12 in medical benefits, and $15,000.50 in permanent partial disability benefits, a total of $33,693.97. Travelers then brought an action against Dyer, asserting its right of subrogation to the extent of payment of workers compensation benefits to Assalone. Hartford, apparently in response, filed a third-party petition against Dyer, also asserting a right of subrogation. The actions were consolidated in January 1992, and Assalone amended her petition against Hartford to include a claim for bad faith.

¶4 Hartford filed a motion for summary judgment, asserting Assalone's impairment of its right of subrogation by failure to bring an action against the tortfeasor, Dyer. Dyer, as third-party defendant, filed a motion for summary judgment, asserting Hartford had no mature subrogation claim unless or until Hartford paid Assalone's claim. The trial court granted the motions for summary judgment of both Hartford and Dyer.

¶5 Assalone appealed the order granting summary judgment to Hartford, and Hartford appealed the order granting summary judgment to Dyer. *Assalone v. Hartford Acc. & Indem. Co.,* 1994 OK CIV APP 64, 908 P.2d 812 *Pending those appeals, however, in*

*1993 Travelers settled its subrogation claim against with Dyer for about $30,000.00, and granted Dyer a full release.*

¶6 In April 1994, the Court of Civil Appeals reversed the orders granting summary judgment to Hartford and Dyer, and remanded for further proceedings. In that case, the Court of Civil Appeals held, in pertinent part:

> [Assalone] advised Hartford in advance of the running of the tort statute of limitations that she chose not to sue [Dyer]. Under authority cited above, [Assalone] was clearly within her rights to expect payment of her UM claim by Hartford without first pursuing [Dyer]. The fact that Hartford chose not to act, or even investigate, [Assalone's] claim does not prevent [Assalone] from receiving UM benefits when such benefits were contracted and paid for by [Assalone's] employer for the benefit of its employees such as [Assalone]. The policy at issue in this case does not require exhaustion of liability limits or suit against the Dyer.

*Assalone v. Hartford Acc. & Indem. Co.,* 1994 OK CIV APP 64, ¶11, 908 P.2d 812, 814.[1]

¶7 Upon remand, and two years after mandate, the trial court agreed to bifurcate trial of Assalone's claim against Hartford, and Hartford's subrogation claim against Dyer, and set trial of Assalone's claim first. However, on the eve of trial in January 1999, Hartford and Assalone settled her UM and bad faith claims for approximately $400,000.00.[2]

¶8 In preparation for the trial of Hartford's subrogation claim against Dyer,[3] both Hartford and Dyer filed motions in limine. In accord with the trial court's rulings on those motions, Hartford was allowed to introduce only those medical bills and lost wages incurred by Assalone which were in excess of the workers compensation settlement. The trial court also ruled the jury verdict could

---

1. *Cert. Denied,* December 11, 1995; mandate issued, December 14, 1995.

2. Ten years after the accident, nine years after settlement of the workers compensation claim, six years after Travelers settled its subrogation claim with Dyer, and five years after this Court's pronouncement in *Assalone v. Hartford Acc. & Indem. Co.*

3. In which Hartford sought to recover from Dyer the damages it had paid to Assalone.

be reduced by the amount Assalone had received in permanent partial disability benefits. Finally, the trial court refused Hartford's request to exclude the videotaped trial deposition of its medical expert.

¶9 In April 2000, the jury returned a verdict for Hartford in the amount of $15,000.00, from which the trial court deducted $15,000.50 (representing PPD benefits paid), denied Hartford's request for prejudgment interest, entered judgment for Hartford in the amount of $0.00, and granted Hartford's prayer for costs. Both parties seek review.

¶10 In the principal appeal, Hartford complains the trial court erred in limiting its proof of Assalone's damages, and asserts it should have been permitted to present to the jury all evidence of Assalone's medical expenses and lost wages, including the amount Assalone had previously been compensated by Travelers. By force of 85 O.S.1991 § 44, however, only Travelers—as Assalone's employer's workers compensation carrier—could assert the right of subrogation to the extent of payment of workers compensation benefits to Assalone.[4] Hartford—as the subrogated UM insurer—could only assert whatever rights Assalone had against the tortfeasor, Dyer. Because Travelers had previously settled with and released Dyer, Hartford could not recover from Dyer, even as a trustee, the medical expenses and lost wages for which Assalone had already been paid in workers compensation benefits. Since Dyer had received a release from Travelers for workers' compensation payments, it was not error for the trial court to exclude evidence of this claim.

¶11 Moreover, because Assalone is not allowed to recover for bad faith from Dyer, Hartford is prohibited from recovering from Dyer any damages Hartford paid to Assalone in settlement of Assalone's bad faith claim. See 36 O.S.1991 § 3636(E).

¶12 The remaining question is whether the trial court erred in deducting from the jury verdict $15,000.50, an amount equal to PPD benefits received by Assalone. Dyer argues that since Travelers had been paid and released him from liability, he should get a credit for the PPD benefits. However, an award of *permanent* partial *disability*—an entirely statutory creature—in our view, is not recoverable in tort.[5] And, the parties cite, and we find, no authority allowing a tortfeasor credit for workers compensation benefits paid.

¶13 Thus, payments of PPD to Assalone are *not* available to reduce Dyer's liability and Harford's verdict for medical expenses, lost wages, pain and suffering, etc. In this regard, we hold the trial court erred in reducing the jury verdict in Hartford's favor by the lump sum Assalone received for PPD in workers compensation benefits.

¶14 In its next several propositions of error, Hartford complains the trial court erred in the admission of evidence. Particularly, Hartford asserts the trial court erred in denying its pre-trial motion in limine, and permitting the introduction of the videotaped testimony of Hartford's own expert medical witness, retained by Hartford in defense of Assalone's UM claim, who testified that Assalone did not sustain the *extent* of the injuries she claimed.[6]

¶15 A trial court's pre-trial rulings on motions in limine are advisory, and only evidentiary rulings during trial remain subject to review. *Ellison v. Ellison*, 1996 OK 64, 919 P.2d 1. If, then, a party fails to object to an evidentiary ruling during trial—regard-

4. Assuming Travelers had not already been paid by the tortfeasor, Dyer, Assalone could have sued Dyer directly for her damages and some workers' compensation benefits, but only as trustee for the workers' compensation insurance carrier under § 44.

5. We are bolstered in this conclusion since a UM insurer is not entitled to a reduction in its limit of liability by amounts paid in workers compen-

sation benefits. 36 O.S. § 3636(E); *Chambers v. Walker*, 1982 OK ——, 653 P.2d 931.

6. In defense of Assalone's UM claim, and to limit its potential UM liability exposure, Hartford sought to *minimize* Assalone's damages. On its subrogated claim against the tortfeasor, however, and in order to recover to the fullest extent of its payment of UM benefits to Assalone, Hartford sought to *maximize* Assalone's damages.

less of the trial court's pre-trial ruling—that party waives any objection. *Fritts v. McKinne,* 1996 OK CIV APP 132, 934 P.2d 371. In the present case, Hartford failed to raise any contemporaneous objection to the proffered evidence at trial, and accordingly, waived any objection to the admission of its expert's testimony.[7]

¶ 16 Hartford nevertheless complains that admission of its expert's testimony was fundamentally unfair because (1) Dyer repeatedly pointed out that the expert had been retained by Hartford, and (2) the expert's testimony referred to "stale, irrelevant and unauthenticated" medical records of Assalone from many years previously.

¶ 17 Generally, the injection of irrelevant or otherwise inadmissible evidence is not grounds to reverse a jury verdict unless the error was prejudicial. *James v. Midkiff,* 1994 OK CIV APP 165, ¶ 6, 888 P.2d 5, 6; *RJB Gas Pipeline Company v. Colorado Interstate Gas Company,* 1990 OK CIV APP 47, ¶ 24, 813 P.2d 14, 21. The test of prejudice is the likelihood the verdict would have been different had the error not occurred measured by the usual criterion of the verdict's support in the evidence. *Matter of M.A.G.,* 1996 OK CIV APP 103, ¶ 4, 924 P.2d 795, 796; *James,* 1994 OK CIV APP 165, ¶ 6, 888 P.2d at 6.

¶ 18 As we noted, Hartford interposed no contemporaneous objection to the admission of its expert's testimony at trial. Moreover, Hartford fails to demonstrate how it was prejudiced. Having reviewed the record, we cannot say the trial court abused its discretion in the admission of evidence as alleged.

¶ 19 Finally, Hartford complains the trial court erred in failing to award it pre-judgment interest on the jury *verdict* of

$15,000.00. Here, Hartford asserts that 12 O.S.1991 § 727(E) mandates such an award.[8] However, and because we reverse that part of the trial court's judgment deducting $15,000.50 PPD payment from the jury verdict of $15,000.00, we remand this issue to the trial court to determine if pre-judgment interest applies and, if so, to what extent.

¶ 20 In the counter-appeal, Dyer maintains Hartford's entire case relies on the allegedly erroneous assumption that Assalone had a valid UM claim against Hartford. Here, Dyer argues that Assalone could assert no valid UM claim unless and until Assalone's damages were proven to exceed his liability limit of $100,000.00. So, says Dyer, because the jury verdict of $15,000.00 did not exceed his liability limit, Hartford has no valid subrogated UM claim against him.

¶ 21 However, an insured may pursue the UM insurer directly for the full extent of damages without first pursuing an adjudication of damages by the tortfeasor:

> [T]he UM carrier is directly and primarily liable to its insured for the entire loss to be indemnified, except where the insured affirmatively destroys the insurer's subrogation right, and *[t]he UM carrier is statutorily subrogated to the rights of its insured against the tortfeasor and the tortfeasor's liability carrier, if any there be, and must seek recovery of paid indemnity through an exercise of its right to subrogation.*

*Burch v. Allstate Ins. Co.,* 1998 OK 129, ¶ 18, 977 P.2d 1057, 1065. (Emphasis added.) In the present case, Assalone permissibly sought recovery of the full extent of her damages from the UM insurer, Hartford, and

---

7. Assuming *arguendo* Hartford renewed or preserved its objection to this evidence, Hartford fails to cite any *applicable* authority for its exclusion.

8. That section provides in pertinent part:
   Except as provided by subsection F of this section, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk.....

Hartford permissibly asserted its subrogation rights against the tortfeasor, Dyer. Therefore, we find Dyer's counter appeal without merit.[9]

¶ 22 The trial court's order granting judgment on the jury verdict is therefore AFFIRMED IN PART, REVERSED IN PART, and the cause REMANDED for further proceedings not inconsistent with this opinion.

JONES and BUETTNER, JJ., concur.

---

9. Dyer's counter appeal alleging the trial court erred in awarding Hartford its costs on the grounds Hartford did not prevail due to the trial court's judgment of $0.00 is rendered moot by this Court's pronouncements *infra*.