## OKLAHOMA TAX COMMISSION v. PRICE, Adm'x.

No. 32030. March 12, 1946.

Rehearing Denied April 16, 1946.

167 P. 2d 873.

E. L. Mitchell, W. F. Speakman, and C. W. King, all of Oklahoma City, for plaintiff in error.

Logan Stephenson, F. C. Swindell, and Q. M. Dickason, all of Tulsa, and C. W. Clift, of Oklahoma City, for defendant in error.

CORN, J. Charles R. Price died July 1, 1941, possessed of a valued estate composed principally of real estate (farm land) in Garvin county, together with livestock, and some rental property in Oklahoma City, Okla.

Plaintiff, administratrix, returned this property to defendant for inheritance tax purposes, paying inheritance taxes of $3,009.86. More than a year later defendant entered its order raising the assessed valuation $45,920 and assessing additional tax of $2,617.71, plus penalty of $170.10.

Thereafter plaintiff filed her protest to such reassessment, and offered testimony that such reassessment was erroneous. Defendant later issued its order raising the assessed valuation of the estate to $126,667.23, and fixed a total tax liability thereon of $5,300.03, of which there was due $2,290.17.

Plaintiff paid the balance of said tax, with interest, under protest and at the same time gave notice of her intention to file suit to recover said amount plus interest. Plaintiff then filed this action, alleging defendant acted arbitrarily and that the reassessment entered by defendant was erroneous and far in excess of the true value of the estate on date of her decedent's death.

The cause was tried to a jury and a verdict for the sum of $2,816.91 was returned in favor of plaintiff, representing the full amount of the tax paid under defendant's order of reassessment, plus interest. Motion for new trial was overruled, and from this judgment defendant has appealed.

Plaintiff's case was based upon the testimony of eight witnesses, including plaintiff herself, the three parties who served as appraisers of the estate, one real estate man, and three farmers who owned and farmed land in the vicinity of the land in question and who qualified as knowing the value of farm land in Garvin county, particularly in the vicinity. These witnesses testified that in their opinion $65 per acre was a fair price for the land in question on July

1, 1941. The appraisers' testimony was that this land was appraised at what they believed to be its fair cash value as of that date.

The witness Sneed, who dealt in real estate in Oklahoma City, testified concerning the value of the rent property located there, setting the value at $1,400, basing this upon the price received for similar property located in the immediate vicinity and his knowledge of the rental value of property in such localities.

Plaintiff and the witness Patchell testified concerning the value of the livestock, consisting of 12 work mules and 56 young mules, fixing the value at $50 per head on July 1, 1941, as a fair price by reason of a slow market at that date. The other witnesses likewise fixed this amount as a fair value of the livestock. Both the plaintiff and Patchell fixed the value of the land at not to exceed $65 per acre.

One witness for plaintiff, Rush, testified he was familiar with land values and fixed same at $75. The testimony of all the plaintiff's witnesses fixed the value of the land at from $50 to $75 per acre, with the majority of them testifying that $65 per acre was a fair price on July 1, 1941.

Defendant's witnesses, six in number, fixed the value of the land at $100 to $200 per acre. One witness, Carey, testified the rental property in Oklahoma City was worth from $3,500 to $5,000 based upon its investment value for business purposes.

The defendant also introduced the testimony of one Craig, who was one of the appraisers of the estate, who testified that when this property was appraised the appraisers took into consideration the tax record in Garvin county and what this land was assessed for ad valorem purposes. It was also brought out on cross-examination of the other appraisers that they had taken the assessed valuation of the land, as shown by the tax rolls, into consideration in making their appraisement.

The errors complained of, and upon which defendant seeks reversal of this judgment, are presented under four propositions. The first assignment is that the trial court erred in giving instruction No. 4, as follows:

"No. 4. You are instructed that the rule of law governing the appraisement of property for inheritance tax purposes and the rule of law providing for the listing and assessment of property by the county assessor for ad valorem purposes is the same. That is to say, that all taxable property shall be listed, appraised and assessed at its fair cash market value, and when appraising for inheritance tax purposes the value shall be fixed as of the date of the death of the deceased, in this case being the first of July, 1941."

The reference in instruction No. 4 to assessed value of property for ad valorem tax purposes was superfluous and inappropriate, but was harmless in view of the remainder of instruction No. 4 and instructionus Nos. 5 and 6, wherein fair cash market value was defined.

Defendant contends that it is a matter of common knowledge, of which this court should take judicial notice, that property generally throughout this state is assessed at substantially less than its fair cash value. Hence defendant says that the appraisement herein, the appraisers admittedly having considered the valuations set up on the tax rolls, was not an appraisement for inheritance tax purposes at the fair cash value of the property.

Further, in instruction No. 5 the trial court defined the meaning of fair cash market value, leaving no doubt in the minds of the jury as to the meaning and intent of the rule mentioned in the provisions referred to in instruction No. 4. It is a settled principle that instructions to the jury must be taken as a whole. Hazelrigg v. Harvey, 191 Okla. 648, 132 P. 2d 650.

The record herein amply supports the verdict rendered by the jury under instructions advising the jury that the rule covering such appraisements was

based upon fair cash value of the property at the time of the owner's death, and defining "fair cash market value" for the jury's benefit.

It was within the province of the jury to accept or reject such testimony concerning the market value of this land as they saw fit. The rule is too well founded to require extended discussion or citation of authority that, where there is competent evidence reasonably tending to support the jury's verdict, this court will not disturb such judgment on appeal. Culver v. Bayless, 193 Okla. 123, 146 P. 2d 292; Latson v. McCollom, 192 Okla. 147, 134 P. 2d 130; Wineland v. Jones, 192 Okla. 147, 134 P. 2d 578.

Defendant further contends the trial court's refusal to give the following requested instruction was error. This requested instruction was:

"You are instructed that the assessed valuation for real estate for ad valorem tax purposes is not the criterion by which to fix the fair cash value of the property in controversy, but the rule by which you are governed for the valuation for which said property would be sold at a fair voluntary sale by a willing seller to a purchaser willing and able to buy."

This requested instruction was properly refused. By instruction No. 4, as heretofore pointed out, the trial court only advised the jury that the rule both for purposes of assessment and for inheritance tax was measured by the same yardstick, namely, the fair cash market value, and then advised the jury as to the legal significance of "fair cash market value." The matter contained in such requested instruction was sufficiently covered by the instructions as given. Where the instructions given fairly and reasonably present the issues in the cause, it is not error to refuse to submit requested instructions to the jury. Melton v. Schulte, 194 Okla. 639, 154 P. 2d 90.

Defendant's fourth assignment of error is based upon the trial court's refusal to permit the introduction of testimony by the director of the ad valorem division of the Tax Commission concerning studies made in relation to the ratio between ad valorem valuations and real estate valuations generally throughout the state.

Defendant called this witness, who testified it was the duty of his department to make a study of the ratio between assessed valuation and actual valuation of property throughout the state. Thereafter the witness was asked:

"Q. (By Mr. Speakman:) Can you state what per cent of the actual valuation of the property in Garvin county is assessed? Mr. Stephenson: Now we object to that. The Court: Sustained. Mr. Speakman: Exception."

No offer of proof was made concerning what would be shown by such testimony. Therefore, we are unable to determine from the record what effect such testimony might have had if admitted, or whether the exclusion of such testimony was detrimental.

Defendant's final assignment of error deals with the trial court's alleged failure to fully instruct the jury as to the law governing the case. We have examined the instructions given, and those requested by the defendant, and are of the opinion the instructions given fairly advised the jury as to the law to be applied to the issues. Instructions must be considered as a whole, and when the instructions given fairly present the law applicable to the issues, the verdict will not be disturbed. McLaughlin v. Union Transportation Co., 117 Okla. 115, 57 P. 2d 868.

Judgment affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, BAYLESS, and DAVISON, JJ., concur. ARNOLD, J., dissents.

ARNOLD, J. (dissenting). I have no objection to the rules of law stated, but think, as the majority practically concede, that the instruction complained of is erroneous. In my judgment, the instruction had the practical

effect of indicating to the jury that it should give great weight to the testimony relative to the assessed value of the real estate, the actual cash value of which must be the basis of the inheritance tax in question. The least that can be said of the instruction is that it amounted to a comment by the judge upon the credibility of such testimony. It is evident to my mind that the erroneous instruction probably resulted in the jury's verdict in the amount of the assessed value of the land. In arriving at this conclusion I cannot disregard our common knowledge that assessed values are not fixed, as required by law, at fair cash market value, but are generally fixed much lower. I cannot agree that the instruction was harmless.