STATE ex rel. STATE HIGHWAY COMMISSION v. ANDERSON et al. (two cases).

Nos. 33633, 33634.   Dec. 19, 1950.

Rehearing Denied Jan. 16, 1951.

*226 P. 2d 398.*

Mac Q. Williamson, Atty. Gen., and Finis O. Stewart, Asst. Atty. Gen., for plaintiff in error.

Criswell & Criswell, of Wewoka, and A. E. Pearson, of Oklahoma City, for defendants in error.

JOHNSON, J. This proceeding No. 33634 and its companion case No. 33633 were instituted by the State of Oklahoma ex rel. State Highway Commission against Forest Anderson as landowner and Forest Anderson et al., lessee, to condemn certain realty for highway construction purposes.

The commissioners appointed by the court awarded the land owner in case No. 33634 the sum of $750 for damage to Anderson's farm, and awarded him as lessee in case No. 33633 the sum of $300. Whereupon, the defendant Forest Anderson filed his objections thereto in each case and demanded a jury trial. The cases were consolidated and trial was had before the court, jury having been waived by the parties, resulting in judgment of the trial court assessing the defendant's total damages in both cases in a single judgment in the sum of $2,000, and plaintiff in error appeals.

In each case plaintiff in error asserts under one proposition that "The judgment must be reversed because the defendant offered no competent evidence whatever as to the value of the land either before or after the taking, and therefore failed utterly to prove his damages."

The parties herein occupy the same relative positions they occupied in the trial court and will hereafter be referred to in that manner.

The lands appropriated by the plaintiff consisted of 20.9 acres from a tract of land owned by the defendant in sections 13, 14, 15 and 22. He also had a five-year lease on 320 acres of land along the new highway from the Indian Department, such land being in sections 13 and 14, twp. 9N, range 5E, Seminole county, Oklahoma, and that at the time the Indian Department had given the plaintiff the right to build its right of way across said land there was still a year of unexpired time possessed by Anderson under said lease with the Indian Department.

The property concerned in cause No. 33633 was tenant's rights to lands leased by Anderson from the Indian Department, the State Highway Commission having already acquired from the Department the lands needed by it for the construction of the highway in question.

It is contended by defendant Anderson that the damage to his leasehold was occasioned by loss of growing crops, rent of a house, and loss of use of pasture caused by removal of fences and failure to replace same. Defendant offered competent evidence in support of this contention. His evidence was to the effect that the value of his leasehold interest was reduced not only because of an estimated damage to growing crops in the area where the new highway was located, but because of the loss of certain fencing, or if the fences were replaced by the Indian Department, the loss of the use of the land for grazing purposes until such fences were rebuilt.

Since the damage shown in this case is included in the single judgment of $2,000 damages assessed in both cases, we have no way of determining whether the amount of the judgment conforms to the amount of damage shown, and, therefore, the judgment in this case must be reversed and a new trial granted.

Cause No. 33634 is concerning lands owned by Forest Anderson and appropriated by the plaintiff for state highway purposes. The defendant is seeking compensation for the land appropriated and the injuries accruing to the residue from the taking.

The defendant's evidence as to damages sustained by the taking of his land consisted of his testimony and that of Don Smith.

Forest Anderson testified substantially as follows: That he had lived in Seminole county since 1907; that he thought he knew the value of farm lands in this vicinity and in said county; that he had bought and sold many hundreds of acres of land in the county; that the value of his lands taken by plaintiff was $50 per acre. He testified as to the use and intended use of his lands and effect the new highway would have on the use of said lands, particularly with reference to access, ingress and egress, etc., to his new home (which cost him approximately $15,000), his barns and chicken houses. He testified that the damage to all his land as a whole was $25 per acre; that the damage to the use, etc., was $3,000.

Don Smith testified in substance that he had lived in Seminole for seventeen years and was engaged in real estate business; that he was acquainted with the value of farm and city properties in said city and Seminole county; that he was acquainted with the farm lands of Forest Anderson; knew where the highway crossed his lands, and described in detail the effects of the taking of a portion of said farm on the remainder of the farm lands; that he had viewed the farm lands involved since the construction of said highway; that the value of the land taken for road purposes would average $25 per acre; that Anderson's houses, barns and hedges upon the old highway No. 9 were north of the new highway; that now to get from his barns and his houses where he keeps his stock down to his pasture he would have to cross over the new highway. Over the objection of plaintiff, Smith was asked, "Assuming that the whole of Anderson's land was worth $30 an acre, what in your judgment is the difference between the value of Forest Anderson's farm with this highway through it now, and what it was before the highway went through it?" His answer was, "I think $5,000." Whereupon the witness

by cross-examination detailed in minute particulars wherein the damage to the use of the remainder would and did occur.

The plaintiff presented evidence by two qualified witnesses, Robert Varnum and Bob Short. Robert Varnum testified that he lived four miles north and one mile west of Seminole; that he was engaged in ranching, farming and real estate business; that he was well acquainted with the values of real property in the vicinity and particularly the defendant's lands; that prior to the appropriation by the plaintiff the value of the farm was approximately $10 per acre, and that as a result of the plaintiff's appropriation the value had hardly changed; that $15 or $20 a quarter was a fair price for setting back the defendant's fence and that the construction of new fence was less than $1 per rod.

Witness Bob Short testified in substance that he lived two and a half miles northwest of Seminole; that he was claim agent and special agent for an oil company; that he had been familiar with the values of real property for a number of years, and was acquainted with the land in question and knew its value. He said the farm in question was worth $20 an acre prior to the plaintiff's appropriation and that, except for the actual acreage taken and the fencing required because of the highway being put through the farm, the value of the farm after the taking remained worth about $20 an acre. That the cost of fencing both sides of the new highway would amount to from 80 cents to $1 a rod, and that the setting back of some fencing that was already there would cost about $15. He testified that the value of the shack house belonging to defendant Anderson that had been moved from the leased land was around $100; that the highway department had simply skidded same to the north, not damaging it too much.

We said in Champlin Refining Co. v. Donnell, 173 Okla. 527, 49 P. 2d 208, 103 A. L. R. 157:

"The ultimate question for the jury to determine in this class of cases is, the value of the land actually taken, and if less than the whole tract is taken, how much that portion not taken is diminished in market value in consequence of the taking. These values are to be determined with reference to what the land is worth for sale in view of the uses to which it might have been applied.

"The evidence then should be as to the reasonable market value of the lands immediately before the taking and immediately thereafter.

"It is for the jury to determine from such evidence the amount of damage . . ."

To the same effect was our holding in Tulsa Drainage District No. 12 v. Stroud, 198 Okla. 688, 181 P. 2d 1000, wherein in the opinion we said:

"It is the general rule that where part only of a tract of land is condemned, the measure of damages is the difference between the fair market value of the whole property at the time of condemnation and the present market value of the property left."

In this case there was no competent evidence offered by the defendant as to the amount of damage to the property not taken, and, this being so, there were no facts upon which the amount of damages allowed could be fixed or calculated, and when the defendant and his witness were permitted to state their opinion as to the quantum of damages sustained over the objections of plaintiff, it was error. Empire Oil & Refining Co. v. Webb, 178 Okla. 241, 62 P. 2d 652; Champlin Refining Co. v. Donnell, supra, Tulsa Drainage District No. 12 v. Stroud, supra.

It is next urged that a jury having been waived, the court was a trier of the facts; that after all the evidence was in, the case was continued until the court went upon the lands and inspected the damage personally; that by reason thereof the court was qualified to use his judgment as to the damage sustained.

We do not agree with this argument.

It is true that the view of the premises by the court sitting as a trier of the facts would serve the same purpose as if done by a jury. But our rule is that the results of the jury's view may be considered by it together with all the evidence with a right to exercise their judgment, based upon such evidence and their inspection and observation; that their observation is only for the purpose of enabling them to form a correct judgment. Blincoe v. Choctaw O. & W. R. Co., 16 Okla. 286, 83 P. 903, 4 L. R. A. (N.S.) 890, 8 Ann. Cas. 689, and followed in Tulsa County Drainage Dist. No. 12 v. Stroud, supra; 29 C. J. S., Eminent Domain, sec. 288, subsection (b)—Purpose of view and effect as evidence.

There being no evidence of admissions by plaintiff sufficient to support the judgment, it must be, and is, reversed and a new trial granted.

WELCH, CORN, GIBSON, LUTTRELL, HALLEY, and O'NEAL, JJ., concur. DAVISON, C.J., and ARNOLD, V. C. J., dissent.