Wynonah DOYLE, Plaintiff In Error,

v.

S. Glenn DOUGLAS and Steve A. Douglas, Defendants In Error.

No. 40310.

Supreme Court of Oklahoma.

March 24, 1964.

A. J. Schott, Stillwater, for plaintiff in error.

Hoel & Horton, Stillwater, for defendants in error.

Miskovsky, Sullivan, Embry, & Miskovsky, Oklahoma City, amicus curiae.

PER CURIAM:

Plaintiff in her petition alleged in part:

"That on the 5th day of January, 1961, plaintiff was lawfully in defendant, S. Glenn Douglas' Big Country Store for

the purpose of purchasing certain articles of merchandise, to-wit:

| "Bromo-quinine | .49 |
| Quart of milk | .25 |
| Box of BC headache pills | .25 |
| Meat—sliced ham | 2.09 |
| Box of crackers | .19 |
| Tax | .07 |
| Cigarettes | .26 |
| Total | $3.60 |

"That she did purchase the said items and paid for them in good and lawful money. That immediately on leaving the store and while she was still on a sort of porch only a few feet from the entrance to the store, that she was with force, forcibly and violently seized, assaulted and laid hold of by defendant, Steve A. Douglas who was the servant and agent of the defendant, S. Glenn Douglas, and acting under such employment and within the scope of his authority, who at the same time and place, falsely, publicly, and maliciously accused the plaintiff of having stolen from the defendant two pounds of bacon and three articles of drugs.

"3. That plaintiff did not steal said two pounds of bacon and three articles of drugs or any other thing from the defendant and that she then and there so stated and demanded to be released. That it was then necessary for the plaintiff to accompany the defendant, Steve A. Douglas, and submit to the search of her shopping bag, and her purse, and to remove her coat and to examine the cuffs and lining of same in order for her to convince the defendant, Steve A. Douglas, that she had not stolen the items charged.

"4. That by reason of said assault and said false and malicious arrest, detention and imprisonment of the plaintiff, plaintiff was subjected to great indignities, humiliation and disgrace. That it was necessary for the plaintiff to walk the entire length of the store in the company of the said Steve A.

Douglas and that the store contained a large crowd of shoppers who were aware that the plaintiff was arrested and charged with being a thief."

And sought to recover $10,020.00 actual damages and $10,000.00 punitive damages.

The answer of the defendants was a general denial with the following admissions and allegations, to-wit:

"Defendants admit that the defendant, S. Glenn Douglas, is the owner of Douglas Big Country Store in Stillwater, Oklahoma, and that on the 5th day of January, 1961, the defendant Steve A. Douglas was an agent and employee of the defendant, S. Glenn Douglas.

"Defendants further admit that on the 5th day of January, 1961, the plaintiff was in the Douglas Big Country Store and selected certain items of goods for purchase and paid for same.

"Defendants further allege that the defendant, Steve A. Douglas, had probable cause for believing the plaintiff had unlawfully taken other items of merchandise which she concealed and did not exhibit for the purpose of paying for the same, and after the plaintiff had paid for the items she exhibited for purchase, defendant interrogated the plaintiff in regard to certain items of merchandise which the defendant, Steve A. Douglas, believed she had in her possession but which she did not exhibit and pay for, and that plaintiff voluntarily opened her purse and sack of groceries and disclosed the contents of the same to the defendant, Steve A. Douglas.

"Defendants specifically deny that the defendant, Steve A. Douglas, seized, assaulted, laid hold of her or detained the plaintiff or publicly accused her of having stolen items of merchandise from Douglas Big Country Store."

Before the cause was submitted to the jury the trial court sustained the demurrer of the defendants to the evidence of the plaintiff for punitive damages.

At the conclusion of the trial the jury returned a verdict for the defendants.

 The evidence will be discussed with each assignment of error. The first assignment of error is that the court erred in permitting the defendants to introduce into evidence, over the objection of the plaintiff, evidence in regard to "shoplifting problem" alleged by the defendants to be confronting grocery stores in general as well as the defendants' grocery store.

The first witness called for defendants was Mr. Hill, who testified as follows:

"Q. Mr. Hill, I'll ask you this, in a store where groceries and meats are sold such as the Douglas Store, is shop-lifting a problem?

"Mr. Schott: Just a minute now, if the Court please, we can't see how any problem of shop-lifting which a grocery store may or may not have has anything to do with this particular case, and we object to it as being incompetent, irrelevant and immaterial, and not within the issues of this case.

"The Court: Overruled.

"Mr. Schott: Exception.

"A. Yes, sir, it has been ever since World War II.

"Q. It is a matter of frequent occurrence?

"A. Yes, sir."

The defendants next called four additional witnesses, who testified without any objections from the plaintiff, that grocery store owners do have a shoplifting problem.

In support of this assignment of error the plaintiff cited Conoly v. Imperial Tobacco Co., 63 Ga.App. 880, 12 S.E.2d 398, wherein that court held:

"This is a case of illegal arrest and false imprisonment. Probable cause is not essential to support a case of this kind. However, in an action for causing the plaintiff to be illegally arrested and illegally imprisoned, evidence affording reasonable and probable cause, or suspicion of the plaintiff's guilt, is relevant in mitigation of

damages. \* \* \* Evidence admitted and objected to, to the effect that boys other than Jack Conoly had, on occasions other than the one involved in the investigation being made by the policeman and Lassiter of the commission of which Jack and the other four boys were accused, been guilty of breaking windows and other trespasses upon the property of the tobacco company; that the policeman Duffy had chased some boys away on previous occasions; and that complaints had been made as to other trespasses several years before the occasion in question, was irrelevant to shed any light upon the legality of the conduct of Lassiter and of the policeman as to the probable guilt or innocence of Jack or any of the other boys. \* \* \*"

In Benzel v. Pitchford, 206 Okl. 672, 245 P.2d 1131, wherein we reversed the judgment of the trial court for erroneous admission of prejudicial evidence we said in the body of the opinion:

"We are familiar with the rule that a cause will not be reversed on account of the admission of incompetent evidence if it does not affirmatively appear that such admission resulted prejudicially to the interest of the objecting party. Yukon Mills & Grain Co. v. Imperial Roller Mills Co., 34 Okl. 817, 127 P. 422; Cole v. Ramsey, 124 Okl. 235, 254 P. 962; Peoples Finance & Thrift Co. v. Fuller, 196 Okl. 32, 162 P.2d 189; Sautbine v. C. I. T. Corp., 172 Okl. 526, 45 P.2d 764; Fixico v. Harmon, 180 Okl. 412, 70 P.2d 114; Mid-Continent Petroleum Corp. v. Fisher, 183 Okl. 638, 84 P.2d 22; West v. Clopine, 200 Okl. 625, 198 P.2d 742.

"And that a case will not be reversed for error in the admission of evidence unless it appears from the whole record that a miscarriage of justice has probably resulted or a constitutional or statutory right has been violated. Allen v. Okla. State Bank, 133 Okl. 14,

270 P. 838; Graf Packing Co. v. Pelphrey, 171 Okl. 416, 42 P.2d 889.

"Also the rule that the objecting party has the burden of showing that evidence was incompetent and also prejudicial. Union Petroleum Co. v. Oklahoma N. M. & P. Ry. Co., 114 Okl. 21, 242 P. 1027, and Render v. Richardson, 168 Okl. 122, 31 P.2d 923."

In Rogers v. Citizens National Bank in Okmulgee, Okl., 373 P.2d 256, in the second paragraph of the syllabus we held:

"Objecting party has burden of showing that admitted evidence was incompetent and also prejudicial."

▮ The second assignment of error is that the court erred in allowing the defendants, over the objection of the plaintiff, to introduce into evidence, evidence of alleged activities of the plaintiff that were alleged to have occurred some three weeks prior to the date of the incident that precipitated the action for false imprisonment. The evidence complained of is as follows:

"Q. I'll ask you if prior to January 5, 1961, when this incident occurred, had you ever had occasion to observe Mrs. Doyle?

"A. Yes, sir.

"Q. I'll ask you whether or not there was anything about the manner in which she shopped that directed your attention to her?

"Mr. Schott: Just a minute please, If the Court please, we'd like to object to any testimony on the part of this witness as to any action previous to the particular day in question January 5, 1961, as being incompetent, irrelevant, immaterial, not within the issues of this case and has nothing to do with this case.

"The Court: Overruled.

"Mr. Schott: Exception.

"Mr. Horton: Go ahead and answer the question Mr. Hill.

"A. I had watched a couple of times because certain people, when they come in they have a funny action, and if you

ever watched people before, why you understand somebody that looks like they are a little-suspicious, and I had watched her a couple of times before, prior to that last occasion.

"Mr. Schott: If the Court please, we move that this testimony be stricken, this man is not qualified to determine whether a person is acting suspiciously or not, he has not been qualified to make any such assertion.

"The Court: Overruled, you have an exception.

\* \* \* \* \* \*

"Q. Mr. Hill, I'll ask you this, had you ever prior to the 5th day of January, 1961, seen Mrs. Doyle take any articles?

"A. Yes, sir.

"Q. That is, that you felt she was not paying for?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Now, on these two occasions in question, could you identify the exact item she picked up?

"A. No, sir, I would not, they were small articles and with the distance it would be hard to read that far, but you could tell that she had an article in her hand when she reached for it.

"Q. As I understand you, you could check the total number of items you had seen her take against the total number she paid for?

"A. That's right."

22 O.S.1961 § 1341, dealing with shoplifting, reads as follows:

"A peace officer, or merchant, or a merchant's employee who has probable cause for believing that merchandise held for sale by the merchant has been unlawfully taken by a person and that he can recover such merchandise by taking the person into custody, may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time, until a duly authorized officer can be summoned."

The evidence objected to by the plaintiff was prior acts of her concerning shoplifting in the defendants' store within a period of a few weeks before the act in controversy.

In Williams v. Frey, 182 Okl. 556, 78 P.2d 1052, we held:

"The term 'probable cause' does not mean actual or positive cause, and is not dependent upon whether the party charged is actually guilty or proved guilty. Ordinarily, if the known facts and circumstances are such as to justify a man of prudence and caution in believing that the offense has been committed, probable cause exists."

Under the above rule we hold the evidence objected to was properly admitted.

■ The next assignment of error is that the court erred in refusing to allow the plaintiff to present a witness whose evidence would be that the plaintiff's reputation for truth, veracity, honesty and fair dealings and as a peaceful and law-abiding citizen was good.

The general rule concerning testimony of this nature is stated in Vol. 22, Am.Jur., Section 112, p. 426:

"The general rule is that evidence of character and reputation is not admissible unless put in issue by the very proceeding itself. This rule is applied to actions for false imprisonment under which it is usually held that the plaintiff's character is not put in issue; and proof of his bad character in mitigation of damages is excluded, as well as proof of the defendant's good character. In the absence of an attack by the defendant upon the plaintiff's character, evidence of the plaintiff's good character will not be received. The fact that the plaintiff's general reputation before the arrest was bad has been held admissible to rebut the proof of want of probable cause, and also in mitigation of damages, at least where

the plaintiff has introduced evidence of his good reputation without objection."

In Humphreys v. St. Louis-San Francisco Railway Company, Mo.App., 286 S.W. 738, involving damages for false imprisonment, it was held:

"The proceedings in this case did not put the character of plaintiff in issue, nor was his character or reputation directly attacked in any way, and hence it was error to admit evidence as to his good reputation as a citizen.

"The fact that defendant's evidence was of a character which tended to show that plaintiff had violated the law did not put his character in issue in such a way as to furnish a legal ground for the introduction of evidence as to his good reputation."

The last three assignments of error, briefly stated, are that the court erred in not allowing the jury to consider punitive damages; that the verdict of the jury did not conform to the evidence and that the court erred in overruling the motion for a new trial.

■ We fail to find from the evidence that the detention of plaintiff was done maliciously or wantonly by the defendants. Therefore, the question of punitive damages was properly withdrawn from the jury.

■ Under 22 O.S.1961 § 1341, supra, we find from the evidence that the acts of defendants in the detention of the plaintiff were reasonable and for only a reasonable length of time. The last assignment of error is based upon errors that had occurred in the proceeding as set out in the other assignments of error which we have already disposed of.

■ In conclusion we find that the testimony of the plaintiff substantiates the allegations set forth in her petition and that the testimony of the defendant, Steve A. Douglas, supports the answer of the defendants. From an examination of this testimony we find it is in conflict in two particulars. She testified that she was stopped by the defendant, Steve A. Douglas, grabbing her by the arm and turning her around. He denied this. She further testified that he required her to go back into the store. He testified that she voluntarily went back into the store. The conflicts in the above testimony were settled in favor of the defendants by the verdict of the jury. We find the verdict of the jury, approved by the trial court, is reasonably supported by the evidence and therefore will not be reversed on appeal to this court.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, JOHNSON and JACKSON, JJ., concur.

BERRY, J., concurs in result.

WILLIAMS, J., dissents.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, this foregoing opinion was adopted by the Court.