OSCN Found Document:STATE ex rel. DEPT. OF TRANSPORTATION v. CALIBER DEVELOPMENT CO. LLC

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. DEPT. OF TRANSPORTATION v. CALIBER DEVELOPMENT CO. LLC
2016 OK CIV APP 1
Case Number: 111896
Decided: 07/09/2015
Mandate Issued: 01/05/2016
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2016 OK CIV APP 1, __ P.3d __

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT 

THE STATE OF OKLAHOMA ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff/Appellant/Counter-Appellee, v.
CALIBER DEVELOPMENT COMPANY, LLC, Defendant/Appellee/Counter-Appellant
THE OKLAHOMA COUNTY TREASURER, Defendant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA
HONORABLE BARBARA G. SWINTON, TRIAL JUDGE

AFFIRMED

Kelly F. Monaghan, Lori Gilliard, HOLLOWAY & MONAGHAN, Tulsa, Oklahoma, for Plaintiff/Appellant
Dennis R. Box, David M. Box, Michael D. O'Neal, WILLIAMS, BOX, FORSHEE & BULLARD, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee Caliber Development Company, LLC

JOHN F. FISCHER, PRESIDING JUDGE:

¶1 This appeal results from a condemnation proceeding prosecuted by the Department of Transportation pursuant to its power of eminent domain to take property owned by Caliber Development Company, LLC, for the purpose of widening a highway. The principal issue in this appeal concerns the proper method for determining just compensation in that eminent domain proceeding. The Department contends the district court erred in several evidentiary rulings by not permitting its expert witness to testify regarding his valuation method based on its contention that no valuable highway frontage had been taken from Caliber because new frontage was created when the highway was widened. Because we hold that this method is unconstitutional, we affirm the district court's evidentiary rulings, and, therefore, the judgment in favor of Caliber.

BACKGROUND

¶2 In April of 2005, Caliber bought 640 acres of land in northwest Oklahoma City abutting Highway 74. Caliber filed and obtained approval for a planned unit development (PUD) of 225 acres of its property nearest the highway, 125 acres of which could be developed for commercial purposes. In November of 2007, the Department filed a petition pursuant to its power of eminent domain to take a portion of Caliber's property located next to Highway 74 in order to complete a highway expansion project. The petition described two tracts of land, parcel 17 and parcel 18, and two associated easements totaling 25.15 acres of Caliber's property (the Property). Together, parcels 17 and 18 are approximately one mile in length and contain all of Caliber's property adjacent to the existing highway as well as two corners at highway intersections on either side of Caliber's property. Commissioners were appointed, who determined that the just compensation due Caliber was $1,351,250.00. The Department paid this amount on April 23, 2008, but both parties filed a demand for jury trial. The case was tried to a jury on April 8 and 9 of 2013. Caliber's two expert witnesses testified the Property was worth $3,960,000 and $2,806,000 respectively. The Department's expert witness testified the Property was worth $595,000. The jury returned a verdict in favor of Caliber in the amount of $2,670,351.00. The Department's appeal seeks to reverse that judgment and a subsequently entered judgment awarding Caliber costs and attorney fees in the amount of $376,526.97.

STANDARD OF REVIEW

¶3 The standards relevant to appellate review of the issues raised in this appeal were recently stated by the Supreme Court:

A condemnation proceeding is a special proceeding for the taking of private property for public use and must be carried out in accordance with legislatively-proscribed [sic] procedure. On appeal in eminent domain proceedings, the verdict of the jury may be set aside only when it manifestly appears that it is unjust and not supported by any competent evidence. An appellate court's duty is to ensure that there is "competent evidence reasonably tending to support the verdict of the jury and no prejudicial errors are shown in the trial court's instructions to the jury or on legal questions presented during trial."

The trial court is vested with wide discretion in determining what information it receives in a condemnation proceeding. See, e.g., State ex rel. Dep't of Transp. v. Little, 2004 OK 74, ¶ 11, 100 P.3d 707, 712 (evaluation of property value left largely to discretion of trial court). Any "competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser, or which tend to enhance or depreciate the value of the property, is admissible." The "admissibility of evidence of value in condemnation cases is more largely within the trial court's discretion than is the determination of other issues, so that error predicated upon the exclusion of certain evidence will not be sustained except in cases of manifest error."

State ex rel. Dep't of Transp. v. Lamar Adver. of Oklahoma, Inc., 2014 OK 47, ¶¶ 8-9, 335 P.3d 771, 774 (citations omitted).

¶4 The amount of the district court's attorney fee award is reviewed for abuse of discretion. Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890, 895. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Id. (emphasis omitted).

ANALYSIS

¶5 The Department asserts five assignments of error in this appeal.

I. Valuation Method

¶6 The essence of the Department's argument is that the district court erred in excluding part of the testimony of one of its expert witnesses, Rick Carlile. Specifically, the Department contends that Carlile was improperly prevented from fully testifying regarding the appraisal method he used to value the Property. This argument takes two forms: (1) the district court erred in excluding Carlile's "slide-back" appraisal theory, and (2) the district court erred in otherwise unfairly limiting the scope of Carlile's testimony regarding the value of the "larger parcel" from which the Property was taken.[1]

A. The "Slide-back" Valuation

¶7 During pretrial discovery, Caliber determined that Carlile's opinion of the value of the property was based on the theory that the Department's highway expansion did not "take" the landowner's valuable highway frontage or corners because new frontage and corners would exist after the expansion; the previous frontage and corners would merely "slide-back" to a new location. As a result, Carlile's opinion was based on his valuation of the "backland," a part of the property owned by Caliber within which the property taken was located but having a uniform value independent of any increased value resulting from its location adjacent to the highway. Caliber filed a motion in limine seeking to exclude this evidence. The district court conducted a hearing but reserved ruling on the motion until trial. During Carlile's direct examination, Caliber renewed its objection, which the district court sustained.

¶8 The Department argues that the district court's exclusion of Carlile's opinion based on his slide-back or backland appraisal theory was fundamental error. The Department acknowledges that this is an issue of first impression but contends the district court's ruling is contrary to the holding in Bauman v. Ross, 167 U.S. 548, 17 S. Ct. 966 (1896). The Department particularly relies on the following passage:

If, for example, by the widening of a street the part which lies next the street, being the most valuable part of the land, is taken for the public use, and what was before in the rear becomes the front part, and upon a wider street, and thereby of greater value than the whole was before, it is neither just in itself, nor required by the constitution, that the owner should be entitled both to receive the full value of the part taken, considered as front land, and to retain the increase in value of the back land, which has been made front land by the same taking.

Id. at 574-75, 17 S. Ct. at 976-77. The Department's Bauman argument is not persuasive.

The legal principle enunciated in Bauman, 167 U.S. at 574-75, 17 S. Ct. at 976-77, and restated in U.S. v. Sponenbarger, 308 U.S. 256, 266-67, 60 S. Ct. 225, 229 (1939), was grounded on a finding that the government had inflicted only "slight damage" on the property allegedly taken, and had "in substance take[n] nothing from the landowner." Id.

City of Van Buren, Ark. v. United States, 697 F.2d 1058, 1062 (Fed. Cir. 1983). There is no contention in this case that the Department's taking of 25.15 acres of Caliber's property constituted "slight damage."

¶9 Further, Bauman addressed the constitutionality under the Fifth Amendment to the United States Constitution of a statute permitting the enhanced value of property not taken to be offset against the value of the property taken in determining the compensation due a landowner. Bauman held: "The constitution of the United States contains no express prohibition against considering benefits in estimating the just compensation to be paid for private property taken for the public use . . . ." Bauman, 167 U.S. at 584, 17 S. Ct. at 980. The Oklahoma Constitution is different in this regard: "Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken. Any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken." Okla. Const. art. 2, § 24. Oklahoma's "constitutional eminent domain provisions . . . place more stringent limitation on governmental eminent domain power than the limitations imposed by the Fifth Amendment of the U.S. Constitution." Board of Cnty. Comm'rs of Muskogee Cnty. v. Lowery, 2006 OK 31, ¶ 19, 136 P.3d 639, 651.

¶10 In addition, article 2, § 24 was amended in 1990 to add the language previously cited. Prior to the amendment, the method for determining just compensation had not been specified. The Supreme Court had previously adopted the "before-and-after" method, which determined just compensation as the difference in the value of the property before and after the taking. State ex rel. State Highway Comm'n v. Anderson, 1950 OK 333, 226 P.2d 398. The 1990 amendment changed the law of just compensation. "Section 24, article 2 now requires just compensation to be determined by taking the value of the property taken and adding the injury to the remaining property." Williams Natural Gas Co. v. Perkins, 1997 OK 72, ¶ 4, 952 P.2d 483, 486 (declaring unconstitutional the Legislature's 1991 attempt "to rejuvenate the old before-and-after method of determining just compensation . . . ."). The before-and-after method of determining just compensation produces a valuation similar, if not identical, to the slide-back method used by Carlile.

¶11 We hold that the slide-back appraisal theory relied on by Carlile conflicts with the constitutionally specified manner for determining just compensation, because it is not limited to determining "the value of the property taken" and does not offset any benefits to the landowner "only against any injury to the property not taken." Okla. Const. art. 2, § 24. See also, Oklahoma Uniform Jury Instruction 25.3: "[Y]ou may offset an increase in the value of the remaining property against any injury to the remaining property, but you may not offset an increase in the value of the remaining property against the value of the property that was taken." In accordance with article 2, § 24, Carlile's opinion testimony regarding the value of the property taken determined pursuant to the slide-back method constituted incompetent evidence. Therefore, the district court did not err in excluding Carlile's opinion based on this valuation method.[2]

B. The "Larger Parcel" Valuation

¶12 The Department also argues that the district court improperly limited Carlile's testimony about his valuation method independent of his slide-back theory. Carlile testified that he did not use the same appraisal method used by Caliber's expert witness Jim Hoyt. Hoyt testified that he was not a "larger parcel guy" and that he had appraised the property actually taken as land zoned for commercial development that was particularly valuable because it was adjacent to a highway. Carlile testified that he used the "larger parcel" method. He explained this was a four-step process.

¶13 First, an appraiser identifies a larger tract of land within which the property taken is located. In this case, Carlile selected 227.5 of the 640 acres owned by Caliber as the "larger parcel." This larger parcel included the 25.15 acres of Caliber's property adjacent to the highway and taken by the Department for the highway expansion.

¶14 Second, Carlile testified that although commercial development of the Property was permitted by the PUD, no development had yet occurred, and the highest and best use for Caliber's property was to "hold for future development." In Carlile's opinion, residential development in the area was insufficient to support commercial development of the Property on the date of taking, and any such development would have had to compete with substantial commercial development existing nearby. Carlile discounted the fact that development in this area was increasing. Carlile testified that he identified ten properties within three miles of the Caliber property that had not been developed and were of similar size to his larger parcel. Carlile looked at recent sales of those properties and concluded that $0.50 per square foot was an appropriate and representative value for the Caliber property in his larger parcel. In reaching this opinion, Carlile also considered the fact that, three years prior to the taking, Caliber had purchased this property for $0.42 per square foot. Carlile multiplied his $0.50 number by the number of square feet taken and determined that the value of the property taken was $546,692.

¶15 Third, because only part of Caliber's property was taken, Carlile testified he was required to determine if there was any damage to the Caliber property that was not taken. Carlile concluded there was, and added $3,900 to relocate three signs from the Property and $8,500 in engineering fees necessary to revise the existing PUD to account for the expanded highway. Carlile testified that his initial damage assessment totaled $595,000.

¶16 According to Carlile, the final step in his "larger parcel" approach required the subtraction of any benefit to the property not taken resulting from improvements created by the taking. Although recognizing the value of the frontage and corners adjacent to the highway would exceed $0.50 per square foot, Carlile testified that any damage from taking the existing frontage was offset by the benefit created when new frontage was created by the expansion of the highway. Carlile testified to this opinion during his direct examination.

Q. Okay. And then did you determine the value of the part acquired?

A. Yes, ma'am. To value the part acquired we have a permanent acquisition of parcels 17 and 18 of 1,093,384 square feet. Now, the State is not acquiring any frontage. And the State is not acquiring any corners. The corners and the frontage are going to still be there.

Following such testimony, counsel for Caliber objected without stating a basis for the objection, and the district court sustained the objection without discussion. The jury was excused for lunch, and a conference with the court followed. After hearing the arguments of counsel, the trial judge granted Caliber's motion in limine, instructed Carlile that any further opinion testimony in the form of slide-back or backland valuations was not admissible and, if provided, could result in the striking of his entire testimony. For the reasons stated in Part I(A) of this Opinion, we have affirmed the district court's ruling regarding the admissibility of Carlile's slide-back opinion testimony.

¶17 Nonetheless, the Department argues that the threat to strike Carlile's testimony was improper, unfairly limited the scope of his admissible testimony and deprived the Department of a fair trial. However, Carlile was permitted, over Caliber's objection, to fully discuss the difference between his "larger parcel" approach and Hoyt's "property taken" approach. Carlile's opinion testimony that the Department had not taken any frontage or corners was not stricken after the district court granted Caliber's objection and motion in limine. After the jury returned from lunch, the district court did not comment on this testimony, did not instruct the jury to disregard it or discuss the basis for its previous ruling. Therefore, Carlile's opinion that the Department did not take any frontage or corners remained part of the evidence the jury could consider. Doyle v. Douglas, 1964 OK 65, 390 P.2d 871 (party objecting to the district court's evidentiary ruling has the burden of showing that the ruling was prejudicial).

¶18 Finally, during cross-examination, Carlile was questioned extensively about his larger parcel appraisal method, including his view that the Property should not be valued as commercial property. Carlile did concede that this view was not shared by other expert witnesses, including another expert who testified on behalf of the Department. Carlile was also questioned twice during cross-examination regarding his previous testimony that the Department had not taken any frontage or corners. Carlile concluded his testimony by stating that he would "stand by" his previous testimony that frontage and corners were not taken. Although discussed on cross-examination, the subject was not addressed again during the Department's redirect examination of Carlile. After Caliber "opened the door" on this subject during Carlile's cross-examination, it is possible that the district court would have permitted additional examination on this subject by the Department. See Conwill v. Eldridge, 1918 OK 705, ¶ 29, 177 P. 79, 85 (abrogated on other grounds) (party cannot exclude redirect examination of a witness regarding matters discussed on cross-examination). However, the Department did not give the district court that opportunity and, therefore, cannot complain that the district court unfairly limited Carlile's testimony. This Court does not generally review issues the appealing party fails to raise in the trial court. Bottles v. State ex rel. Oklahoma State Bd. of Med. Licensure and Supervision, 1996 OK 59, ¶ 4, 917 P.2d 471, 472. See also, Jackson v. Jackson, 2002 OK 25, n.12, 45 P.3d 418. The Department has thus demonstrated no error by the district court regarding its evidentiary rulings concerning the scope of Carlile's testimony.

II. Denial of a Continuance

¶19 The Department next arg ues that the district court erred when it refused to grant a continuance because of an unanticipated health condition of its designated trial counsel. The Department's motion was filed on March 21, 2013, and denied on March 28, ten days in advance of the trial. The Department's Senior Trial Attorney then represented the Department during trial. The Department contends that the ten days its Senior Trial Attorney had to prepare was insufficient, prejudicing the Department's ability to effectively advocate its position during the trial. The only specific prejudice identified was the fact that the Department's Senior Trial Attorney would have had to work twenty hours a day to put in the same amount of time devoted by Caliber's attorneys during such time period.

¶20 The Department cites Kinnear v. Dennis, 1924 OK 171, 223 P. 383, for the proposition that a litigant has the right to be represented by counsel of its own choosing. The Department acknowledges that its Senior Trial Attorney was "generally familiar" with the case, but contends that she lacked the detailed knowledge possessed by its designated trial counsel. Caliber points out that the Department's Senior Trial Attorney had over twenty years' experience in this area while working for the Department and that she had been involved in this particular matter since its inception. We agree that "requiring [an] attorney's law clerk to proceed with the trial is a denial of the right of the party litigant to be represented by counsel of his own choosing . . . ." Id. ¶ 0, 223 P. 383 (syllabus 2). However, unlike the situation in Kinnear, Department's Senior Trial Attorney was not a law clerk who "knew nothing of the facts or the law in the case." Id. ¶ 3. Additionally, this record does not show "that the stricken attorney is the only person familiar with the facts and the theory of the case represented by him, and is the only one who has prepared to try the case." Id.

¶21 Further, the Department had already sought and been granted one continuance of a previous trial setting. A second continuance would have delayed the trial and the determination of the just compensation due Caliber for well more than five years. The Department's interest in having its preferred counsel try this case must be balanced with Caliber's interest in receiving the just compensation it was due as a result of the Department's taking. "The court may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just. . . ." 12 O.S.2011 § 667. Good cause is not an issue. The issue is whether the denial of the continuance was unjust considering the interests of both parties.

The prompt trial and determination of cases in court is most commendable, but when a trial is forced with such dispatch as to result in depriving an interested party of reasonable opportunity to prepare for trial and secure witnesses, and the whole circumstances are such as to convince that there was an abuse of judicial discretion, it is the duty of this court to reverse.

State v. Duerkson, 1943 OK 6, ¶ 7, 132 P.2d 649, 650. The Department does not argue that five years was an insufficient time to prepare for trial or that the denial of its request for a continuance prevented it from presenting evidence or the testimony of its witnesses at the April 2013 trial. The "refusal to grant a continuance is not reversible error unless an abuse of discretion is shown." Bookout v. Great Plains Reg'l Med. Ctr., 1997 OK 38, ¶ 10, 939 P.2d 1131, 1134. The Department has failed to make the required showing.

III. Admission of Exhibit 38

¶22 The Department argues that the district court improperly admitted Caliber's Exhibit 38. Exhibit 38 compared the comparable sales used by Caliber's expert Hoyt and the Department's expert Carlile with traffic counts in the locations near those sales. The only difference between Exhibit 38 and other exhibits the Department did not challenge is the addition of the traffic count information. The Department argues that the district court erred in admitting this exhibit because it was not listed on the Pretrial Conference Order and was not exchanged prior to trial as required by that Order and related district court rules.

¶23 Caliber argues the exhibit was prepared after the first day of trial and in response to questions asked by the Department's counsel during cross-examination of two of Caliber's expert witnesses. Caliber provided Exhibit 38 to the Department prior to the start of the second day of trial. Caliber concedes that it did not comply with the terms of the Pretrial Conference Order regarding Exhibit 38 but argues compliance was not required, because the exhibit was a rebuttal exhibit and the traffic count issue had been raised by the Department during cross-examination. Whether compliance with the Pretrial Conference Order was or was not required is the only potential error on which the Department relies. "The court, in every stage of action, must disregard any error or defect in the . . . proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." 12 O.S.2011 § 78; accord 12 O.S.2011 § 2104(A) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.").

¶24 The Department also complains that Exhibit 38 showed that traffic counts related to the comparable sales used by Hoyt were more similar to the traffic counts near the Property than the traffic counts near the comparable sales used by Carlile and, therefore, may have "left the jury with the impression that Hoyt's comparable sales were more accurate based on such representations." If so, this evidence had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011 § 2104 (defining relevant evidence). A party objecting to the admission of evidence has the "burden of showing that admitted evidence was incompetent and also prejudicial." Doyle, 1964 OK 65, ¶ 10, 390 P.2d at 874. The Department does not argue that Exhibit 38 was "incompetent." And, as this Court stated in Hartford Ins. Co. v. Dyer, 2002 OK CIV APP 126, ¶ 17, 61 P.3d 912, 916: "The test of prejudice is the likelihood the verdict would have been different had the error not occurred measured by the usual criterion of the verdict's support in the evidence." Accord Karriman v. Orthopedic Clinic, 1973 OK 141, ¶ 21, 516 P.2d 534, 540. The Department has made no showing that the verdict in favor of Caliber would have been different if Exhibit 38 had not been admitted.

IV. Jury Instructions

¶25 The Department also argues that the district court erred in refusing to give two requested instructions. Instruction No. 4, the Department contends, is an accurate statement of the law and explains that the condemnation process requires it to pay the amount of the Commissioners' award before it can take Caliber's property. By not instructing the jury on that fact and in light of Caliber's argument that they had been waiting five years for the jury to determine the amount of just compensation, the Department contends the jury was prejudiced and misled into believing that the Department had not paid any compensation prior to trial. The fact that the Department's requested instruction accurately states the law is not the issue. The issue is whether the instructions that were given fairly and accurately presented the applicable law. "Where the instructions given fairly and reasonably present the issues in the cause, it is not error to refuse to submit requested instructions to the jury." Oklahoma Tax Comm'n v. Price, 1946 OK 85, ¶ 19, 167 P.2d 873, 876.

¶26 The Department acknowledges that the amount of the Commissioners' report is not admissible. "[W]here a trial by jury is had in a condemnation proceeding, the jury determines the damages from the evidence submitted and the award of the Commissioners is not competent evidence." Oklahoma Turnpike Auth. v. Daniel, 1965 OK 7, ¶ 5, 398 P.2d 515, 517. Nonetheless, the Department concludes that the fact that the commissioners made an award and that the Department paid that award is competent and necessary to inform the jury they should not take into account the value of the time between the taking and trial. It is equally plausible to speculate that if the jury is informed that an award has been paid the jury would infer that the amount of that award was more than the Department's trial evidence and less than the landowner's evidence regarding the value of the property taken. In other words, the jury would speculate about a fact the Supreme Court has determined is not competent evidence. Id.

¶27 As Caliber points out, the Department's concern about how the jury was instructed to determine the amount of just compensation is resolved completely and directly by Instruction No. 7:

You should give consideration to all facts and circumstances which would be substantially weighed by a prospective purchaser in determining its value. Your decision must be based upon probabilities, not possibilities. You must not consider any sentimental interest the owner has in the property. You may not base your award on conjecture, speculation or guesswork. Your decision must be based upon conditions known as of April 23, 2008.

Even though it took five years for this case to be tried, the jury was clearly instructed to determine the amount of just compensation "as of April 23, 2008."

¶28 The Department also contends that the district court erred in refusing to give its requested Instruction No. 17, which would have instructed the jury not to consider "the amount of attorney fees, appraisal fees and engineering fees and other costs which may have been incurred by either party in this action." The Department's expert witness, Carlile, testified that the damage to the part of Caliber's property that was not taken included $8,500 in engineering fees necessary to revise Caliber's PUD after the Department's highway expansion had been completed. Instruction No. 17 is not an accurate statement of the applicable law.[3] The Department has demonstrated no error by the district court in refusing to give the Department's requested instructions Nos. 4 and 17.

V. The Attorney Fee Award

¶29 Finally, the Department appeals the amount of the district court's award of attorney fees to Caliber. The Department complains that the district court awarded fees "for over 1200 hours of attorney time by six different attorneys." Both parties called expert witnesses during the hearing on Caliber's motion. In addition, Caliber submitted an exhibit containing 143 pages of detailed time records in support of its motion. Caliber's expert witness addressed factors required by Burk v. Oklahoma City, 1979 OK 115, 598 P.2d 659, and specifically pointed out that although six attorneys had been involved in the case, some were involved early and some later and, in general, only two were working on the case at any particular time. The Department also argued that the time spent by legal assistants was excessive or for non-recoverable secretarial time, but its expert did not identify specific time entries or the amount of time he deemed excessive. The district court reviewed the relevant time entries but "could not find any billings that reflect anything other than a substitute for legal work, which would have been billed at a higher rate had it been done by the attorneys."

¶30 Caliber's evidence showed that part of the reason it incurred the amount of fees it did was because its attorneys had prepared for trial only to have the trial continued at the Department's request, and three depositions had to be taken of the Department's expert witness because he was not fully prepared on the first two occasions. Consequently, there was some duplication of effort, but the duplication was not caused by Caliber. Caliber's expert testified regarding the complexity of this case, due in part to: (1) the Department's delay in finalizing its plans for the expansion of Highway 74; and (2) the nature and intensity of the Department's defense strategy. He also described the skill and expertise required of and demonstrated by Caliber's counsel in prosecuting this case and the very favorable result obtained, a judgment for twice the amount awarded by the Commissioners.

¶31 At the conclusion of the hearing, the district court described various requests for attorney fees or expenses that would not be awarded and then granted Caliber's motion with respect to most of the attorney fees, expenses and costs requested. The reasonableness of an attorney fee award "is peculiarly within the province of a trial court and will not be disturbed on appeal absent an abuse of discretion." Security Nat'l Bank of Enid v. Bonnett, 1980 OK CIV APP 63, ¶ 10, 623 P.2d 1061, 1064 (approved for publication by the Oklahoma Supreme Court) (citing Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659). The Department has failed to show an abuse of the district court's discretion in determining the amount of attorney fees awarded to Caliber.

¶32 Caliber filed a counter-appeal contending the district court erred in denying its request for post-trial costs and attorney fees incurred in the preparation and presentation of its successful motion for attorney fees. However, Caliber failed to address this matter in its appellate briefing and, therefore, appears to have abandoned its counter-appeal. Regardless, issues not supported by argument and authority in a party's brief may be deemed waived. Walker v. Walker, 1985 OK 2, ¶ 4, 695 P.2d 1, 1-2; Oklahoma Supreme Court Rule Rule 1.11(k)(1), 12 O.S. Supp. 2013, ch. 15, app. 1.

CONCLUSION

¶33 The district court did not err with respect to its evidentiary rulings limiting the testimony of the Department's expert witness, because the testimony excluded relied on a valuation method that is not permitted by the Oklahoma Constitution. Neither did the district court err in refusing to grant the Department's requested instructions Nos. 4 and 17. The requested instructions either did not accurately state applicable law or could have misled the jury to consider incompetent evidence. In addition, the Department has not shown that the jury would have reached a different verdict had the district court refused to admit Caliber's Exhibit 38. Balancing the interests of both parties, the district court's refusal to grant a second continuance of the trial was not an abuse of discretion. Finally, the Department has not shown that the district court abused its discretion in determining the amount of attorney fees and costs to be awarded Caliber. The judgments of the district court in favor of Caliber entered on the jury's verdict and granting Caliber's motion for attorney fees are AFFIRMED.

¶34 AFFIRMED.

GOODMAN, V.C.J., and WISEMAN, J., concur.

FOOTNOTES

[1] To the extent the Department raises other objections to the district court's evidentiary rulings regarding Carlile's testimony, they are unsupported by authority and too unfocused to permit appellate review. Cox Oklahoma Telecom, L.L.C. v. State of Oklahoma ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶ 33, 164 P.3d 150, 162; Oklahoma Supreme Court Rule 1.11(k)(1), 12 O.S. Supp. 2013, ch. 15, app. 1.

[2] Because we reach this conclusion, we find no error in the district court's denial of the Department's motion for a mistrial, the fifth assignment of error asserted in the Department's Brief-in-Chief.

[3] The Oklahoma Supreme Court found in Oklahoma Turnpike Auth. v. New, 1993 OK 42, ¶ 6, 853 P.2d 765, 766 that:

Section 11 of title 27 is a provision which is applicable to the OTA. It provides for reimbursement to a landowner of "reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings" when the jury's award exceeds the court-appointed commissioners' award by ten percent. Section 9 makes section 11 applicable to condemnation proceedings for projects which use federal, state, or local funds. (Citation omitted.)

 






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 126, 61 P.3d 912, HARTFORD INSURANCE COMPANY v. DYER
Discussed
 1980 OK CIV APP 63, 623 P.2d 1061, Security Nat. Bank of Enid v. Bonnett
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 42, 853 P.2d 765, 64 OBJ 1072, Oklahoma Turnpike Authority v. New
Discussed
 1997 OK 38, 939 P.2d 1131, 68 OBJ 1284, Bookout v. Great Plains Regional Medical Center
Discussed
 1997 OK 72, 952 P.2d 483, 68 OBJ 2080, WILLIAMS NATURAL GAS COMPANY v. PERKINS
Discussed
 1946 OK 85, 167 P.2d 873, 197 Okla. 1, OKLAHOMA TAX COMM'N v. PRICE
Discussed
 1918 OK 705, 177 P. 79, 71 Okla. 223, CONWILL v. ELDRIDGE
Discussed
 1964 OK 65, 390 P.2d 871, DOYLE v. DOUGLAS
Discussed at Length
 1965 OK 7, 398 P.2d 515, OKLAHOMA TURNPIKE AUTHORITY v. DANIEL
Discussed
 2002 OK 25, 45 P.3d 418, JACKSON v. JACKSON
Discussed
 1924 OK 171, 223 P. 383, 97 Okla. 206, KINNEAR v. DENNIS
Discussed at Length
 1973 OK 141, 516 P.2d 534, KARRIMAN v. ORTHOPEDIC CLINIC
Discussed
 2004 OK 74, 100 P.3d 707, STATE ex rel. DEPT OF TRANSPORTATION v. LITTLE
Discussed
 2006 OK 31, 136 P.3d 639, BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY v. LOWERY
Discussed
 1996 OK 59, 917 P.2d 471, 67 OBJ 1598, Bottles v. State ex rel. Okla. State Bd. of Medical Licensure
Discussed
 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.
Discussed
 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed
 2014 OK 47, 335 P.3d 771, STATE ex rel. DEPT. OF TRANSPORTATION v. LAMAR ADVERTISING OF OKLAHOMA, INC.
Discussed
 1979 OK 115, 598 P.2d 659, STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed at Length
 1950 OK 333, 226 P.2d 398, 203 Okla. 683, STATE ex rel. STATE HWY. COMM'N v. ANDERSON
Discussed
 1943 OK 6, 132 P.2d 649, 191 Okla. 670, STATE v. DUERKSON
Discussed
 1985 OK 2, 695 P.2d 1, Walker v. Walker
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 78, Court to Disregard Insignificant Errors
Cited
 12 O.S. 667, Continuances - Power to Grant - Costs - Continuances Mandatory, and Appeals When Member of Legislature is Party or Attorney
Cited
 12 O.S. 2104, Rulings on Evidence
Discussed